2002-NMCA-064

48 P.3d 102

**STATE of New Mexico,
Plaintiff–Appellee,**

v.

**Arthur ROMERO, Defendant–Appellant.**

**No. 22,112.**

Court of Appeals of New Mexico.

April 18, 2002.

Certiorari Denied, No. 27,515,
June 3, 2002.

Patricia A. Madrid, Attorney General, Santa Fe, NM, Jacqueline R. Medina, Assistant Attorney General, Albuquerque, NM, for Appellee.

Phyllis H. Subin, Chief Public Defender, Nancy M. Hewitt, Assistant Appellate Defender, Santa Fe, NM, for Appellant.

## OPINION

BOSSON, Chief Judge.

{1} In this appeal, a police officer opened the driver's door of Defendant's car to check for a secondary vehicle identification number (VIN) and noticed contraband in plain view. We decide whether that act violated Defendant's rights under the Fourth Amendment to the United States Constitution, Article II, Section 10 of the New Mexico Constitution, or NMSA 1978, Section 66-3-507(B) (1978). We affirm the district court's denial of Defendant's motion to suppress the evidence of that search and seizure of the contraband.

## BACKGROUND

{2} At approximately 11:10 p.m., New Mexico State Police Officer Tim Argo, while patrolling State Road 256 in Roswell, New Mexico, clocked Defendant in a blue Honda traveling 41 m.p.h. in excess of the speed limit. The officer stopped Defendant for speeding, and asked for his driver's license, proof of insurance, and registration, which Defendant was unable to produce. Officer Argo ran a computer check on the license plate. The computer inquiry revealed, and Defendant confirmed, that the license plate on the Honda was registered to a Ford.

{3} The primary VIN was visible on the dashboard of the Honda. Concerned about the possibility of a stolen car, Officer Argo wrote down the VIN, and then opened the driver's door to check for a secondary VIN on the door frame. Officer Argo did not do a computer search of the primary VIN before attempting to locate a secondary VIN on the inside of the car door.

{4} The officer was unable to locate a secondary VIN. Upon opening the driver's door and shining his flashlight on the door frame, Officer Argo saw a clear plastic baggie sticking out a couple of inches from underneath the driver's seat. The baggie contained a green leafy substance that Officer Argo believed to be marijuana. Defendant then admitted that he owned the marijuana, informed Officer Argo that there was a marijuana pipe in the glove compartment, and consented to a search of the car.

{5} Defendant was arrested, charged, and eventually convicted of possession of marijuana with intent to distribute, possession of drug paraphernalia, and improper use of motor vehicle registration. Defendant entered a conditional plea of no contest to these charges after the district court denied his motion to suppress the evidence of the search and seizure. At the hearing on the motion to suppress, Defendant argued that the act of opening his car door to look for a secondary VIN constituted an unreasonable search of his car without probable cause and violated Defendant's rights under the Fourth Amendment to the United States Constitution and Article II, Section 10 of the New Mexico Constitution. The district court disagreed, after determining that it was reasonable for the officer to open the car door to attempt to verify the primary VIN. The court concluded that "the intrusion was appropriate." We agree.

## DISCUSSION

### Standard of Review

{6} On appeal from the district court's denial of a motion to suppress, we review to determine whether the law was correctly applied to the facts, viewing the facts in the light most favorable to the prevailing party. *State v. Cline*, 1998–NMCA–154, ¶ 6, 126 N.M. 77, 966 P.2d 785. Findings of fact are reviewed to determine if they are supported by substantial evidence and legal conclusions are reviewed de novo. *State v. Attaway*, 117 N.M. 141, 144, 870 P.2d 103, 106 (1994); *State v. Leyba*, 1997–NMCA–023, ¶ 8, 123 N.M. 159, 935 P.2d 1171. The facts found by the district court are essentially the same facts contained in

Officer Argo's testimony and are not challenged on appeal. The legal conclusion that the officer's actions were reasonable or justified is a mixed issue of law and fact which we review de novo. *See State v. Paul T.,* 1999–NMSC–037, ¶ 8, 128 N.M. 360, 993 P.2d 74; *Attaway,* 117 N.M. at 145–46, 870 P.2d at 107–08; *State v. Flores,* 1996–NMCA–059, ¶ 6, 122 N.M. 84, 920 P.2d 1038.

■ {7} In this case, Defendant appeals under both the federal and state constitutions, and therefore we apply the "interstitial approach" adopted by our Supreme Court in *State v. Gomez,* 1997–NMSC–006, ¶¶ 20–21, 122 N.M. 777, 932 P.2d 1. *Cline,* 1998–NMCA–154, ¶ 6, 126 N.M. 77, 966 P.2d 785. Under this approach, we ask first whether the motion to suppress should have been granted under the federal constitution and, if not, we look to whether the New Mexico Constitution affords Defendant a greater protection. *See Gomez,* 1997–NMSC–006, ¶ 19, 122 N.M. 777, 932 P.2d 1; *Cline,* 1998–NMCA–154, ¶ 7, 126 N.M. 77, 966 P.2d 785.

### The United States Constitution

■ {8} Defendant argues that Officer Argo did not have probable cause either to search his vehicle or to detain him beyond the brief time necessary to issue a traffic citation. Whether or not a search and seizure is unreasonable and "'violates the Fourth Amendment is judged under the facts of each case by balancing the degree of intrusion into an individual's privacy against the interest of the government in promoting crime prevention and detection.'" *State v. Eli L.,* 1997–NMCA–109, ¶ 8, 124 N.M. 205, 947 P.2d 162 (quoting *State v. Jones,* 114 N.M. 147, 150, 835 P.2d 863, 866 (Ct.App.1992)).

■ {9} Certain points are fixed in the legal landscape. After stopping Defendant for speeding, Officer Argo could lawfully detain Defendant to inspect his license, proof of registration, and insurance. *See State v. Reynolds,* 119 N.M. 383, 386, 890 P.2d 1315, 1318 (1995) (holding that an individual has no legitimate subjective expectation of privacy in license, registration, or insurance documents and must produce them). A law enforcement officer has the right under both

the Fourth Amendment and Article II, Section 10 of the New Mexico Constitution to verify that the driver is lawfully licensed and driving a car that is properly registered and insured. *Id.* at 388, 890 P.2d at 1320. Defendant does not dispute that Officer Argo's traffic stop was justified. Therefore, the only question remaining is whether the length and scope of the investigative detention was justified. *See State v. Cardenas–Alvarez,* 2001–NMSC–017, ¶ 20, 130 N.M. 386, 25 P.3d 225 (interpreting that once it is determined that the initial detention is justified, further detention requires a reasonable suspicion of criminal activity).

■ {10} As a general proposition, the scope of activities permitted during an investigative detention must be reasonably related to the circumstances that initially justified the stop. *Terry v. Ohio,* 392 U.S. 1, 21–22, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). However, once a law enforcement officer makes a lawful stop, he may expand the investigation beyond those initial circumstances if the officer has a reasonable and articulable suspicion that other criminal activity has been or may be afoot. *State v. Williamson,* 2000–NMCA–068, ¶ 8, ·129 N.M. 387, 9 P.3d 70; *State v. Taylor,* 1999–NMCA–022 ¶ 20, 126 N.M. 569, 973 P.2d 246 (1998). If evidence of another crime surfaces during a routine investigatory stop, the officer may proceed in a reasonable manner to investigate. *Taylor,* 1999–NMCA–022, ¶ 21, 126 N.M. 569, 973 ·P.2d 246.

■ {11} Reasonable suspicion is measured by an objective standard, in which the court examines the totality of the surrounding circumstances, to determine whether the officer acted reasonably in expanding the scope of inquiry. *Cardenas–Alvarez,* 2001–NMSC–017, ¶ 21, 130 N.M. 386, 25 P.3d 225; *State v. Werner,* 117 N.M. 315, 318, 871 P.2d 971, 974 (1994) (noting that even if the investigatory stop is lawful the court must determine reasonable justification for the continued detention by balancing the character of the official intrusion on the person's liberty against the justification for that intrusion); *Williamson,* 2000–NMCA–068, ¶ 14, 129 N.M. 387, 9 P.3d 70. The officer's investiga-

tion must be limited to a reasonable inquiry that is designed to satisfy the officer's suspicion. *Williamson*, 2000–NMCA–068, ¶ 8, 129 N.M. 387, 9 P.3d 70.

{12} Although Defendant argues that Officer Argo did not have reasonable suspicion of any wrongdoing that justified looking inside his car, the record does not support Defendant on this point. Once Defendant was unable to produce a vehicle registration, proof of insurance, or any other indicia of lawful possession, Officer Argo appropriately ran a computer inquiry of the driver's license and license plate, which showed that the license plate was registered to a different car. At this point, without registration or other papers establishing ownership or lawful possession of the Honda, Officer Argo reasonably could have suspected that the car might be stolen. *See United States v. Galindo–Gonzales*, 142 F.3d 1217, 1223 (10th Cir.1998) (noting that a defendant's lack of valid registration, license, bill of sale or other indicia proving lawful possession of the vehicle gives rise to an objectively reasonable suspicion that the vehicle may be stolen); *United States v. Miller*, 84 F.3d 1244, 1251 (10th Cir.1996) (citing case that when a defendant could not supply proof of registration, officer had reasonable suspicion van was stolen, justifying further investigation), *overruled on other grounds by United States v. Holland*, 116 F.3d 1353, 1359 n. 4 (10th Cir.1997).

{13} Based upon an objectively reasonable suspicion of criminal activity, Officer Argo then attempted to compare the VIN on the dashboard with a secondary VIN that can usually be located inside the door. On the surface at least, this decision appears reasonable. *See Galindo–Gonzales*, 142 F.3d at 1223; *cf. Werner*, 117 N.M. at 319, 871 P.2d at 975 (holding detention to investigate facts at the scene and to run a radio search of a database is reasonable).

{14} Defendant argues, however, that the officer moved too soon to investigate a secondary VIN inside the car. Instead, according to Defendant, the officer should have proceeded incrementally, first to run a computer check of the primary VIN to see if the vehicle was stolen, and only then, if nec-essary, to investigate the inside of the door for a secondary VIN. Officer Argo testified that he had been trained as a police officer to confirm the primary VIN with a secondary VIN in just this manner, and apparently not in any prescribed, sequential order as suggested by Defendant. Accordingly, we must decide whether the federal constitution requires law enforcement officers to refrain from looking inside the car for a secondary VIN before first attempting to verify the primary VIN by less intrusive means.

{15} In support of such a legal proposition, Defendant relies heavily on *United States v. Caro*, 248 F.3d 1240 (10th Cir.2001), but, in our view, such reliance is misplaced. In *Caro*, the Tenth Circuit Court of Appeals found a violation of the Fourth Amendment when a police officer opened the car door to check for a secondary VIN, because, in that case, the officer had no objectively reasonable and articulable suspicion of criminal activity sufficient to justify the extensive search that followed. *Id.* at 1247. Unlike the present case, the driver in *Caro* produced an accurate driver's license and registration which was verified by a computer. *Id.* at 1242. The driver had no outstanding warrants, and the car had not been reported stolen. *Id.* Before searching the interior of the car, the officer confirmed that the primary VIN, visible from the outside, matched the VIN on the registration. *Id.* at 1242–43. Notwithstanding all these indicators of benign activity, the officer wrongfully proceeded to search the interior of the vehicle. *Id.*

{16} Once inside the car, the officer in *Caro* conducted a complete search of the vehicle. He looked in the trunk and under the hood of the vehicle. *Id.* at 1243. The officer removed the battery and cut open the casing, where he ultimately located the contraband. *Id.* Obviously, the intrusion in *Caro* encroached upon the driver's expectations of privacy to a far greater degree than Officer Argo's actions in the case before us.

{17} The Court in *Caro* issued a narrow holding that declared unconstitutional a search for the secondary VIN in circumstances "where the dashboard VIN plate is readable from outside the passenger com-

partment, *that VIN matches the VIN listed on the registration,* and there are no signs the plate has been tampered with." *Id.* at 1246 (emphasis added). Under these limited circumstances, an officer lacks sufficient cause under the federal constitution to extend the scope of a detention by entering a vehicle for the purpose of further examining a secondary VIN. *Id.*

{18} The circumstances in the case before us differ significantly. Officer Argo knew before opening the door that the license plate was not registered to the vehicle in question, and he knew that Defendant did not have a driver's license or registration certificate. There was nothing with which to compare the primary VIN obtained from the dashboard. Unlike *Caro,* the license plate on Defendant's car was assigned to a different vehicle. Importantly, Officer Argo's limited intrusion was "focused in its objective and no more intrusive than necessary to fulfill that objective." *New York v. Class,* 475 U.S. 106, 118, 106 S.Ct. 960, 89 L.Ed.2d 81 (1986).

{19} Applying the holding in *Caro,* we are satisfied that Officer Argo had far more evidence before him to give rise to an objectively reasonable suspicion of criminal activity. It is equally clear that Officer Argo acted on that suspicion in a far more circumscribed manner than the officer in *Caro.* Finally, we do not read *Caro,* as does Defendant, to prescribe a rigid sequence of actions that investigating officers must always take before looking for a secondary VIN. It depends on the facts and circumstances of a given case.

{20} Defendant has also directed this Court to cases from other jurisdictions, but these cases are readily distinguishable on their facts, and we do not find them persuasive. *See, e.g., State v. Larocco,* 794 P.2d 460, 470–71 (Utah 1990) (holding that search of a *parked* vehicle that officer suspected might be stolen required search warrant before opening unlocked door to compare VIN on dashboard with VIN on door in light of possibility of obtaining telephonic warrant); *People v. Miret–Gonzalez,* 159 A.D.2d 647, 650, 552 N.Y.S.2d 958 (1990) (holding officer's search not justified because driver produced a license and registration which allowed the officer to run a radio inquiry showing vehicle possession to be legitimate and officer had no other information or suspicion that car had been stolen or other justification for further detaining the defendant); *Cook v. State,* 2000 WL 1049279 (Tex.App.2000) (officer not entitled to inspect door jamb of car without any prior suspicion of illegal activity); *State v. Tatum,* 1990 WL 140672 (10th Dist.1990) (officer who rummaged in glove compartment through open window of parked car and found weapon was not justified in the search, and therefore subsequent stop based upon prior search was not justified).

{21} We also note language from the Supreme Court in *Class,* 475 U.S. at 118–19, 106 S.Ct. 960, which arguably limits any reasonable expectation of privacy in either VIN location. However, neither party to this appeal has relied on *Class,* and our holding enables us to do the same without expressing any opinion as to the meaning or applicability of *Class* to this case. *Cf. State v. Guebara,* 119 N.M. 662, 667, 894 P.2d 1018, 1023 (Ct. App.1995) (distinguishing *Class* and declining to apply its VIN analysis to a parked car on private property). Therefore, based on the facts of this case, we hold that Officer Argo acted reasonably and did not violate the Fourth Amendment of the United States Constitution.

## The New Mexico Constitution

{22} Defendant asserts that Article II, Section 10 of the New Mexico Constitution provides greater protection than the United States Constitution and mandates suppression of the evidence found in his vehicle. Defendant contends in his brief in chief that our state constitution requires that an "officer's conduct and questioning during an investigatory stop [be] constrained by the facts giving rise to the officer's reasonable suspicion to stop the car *in the first place.*" (Emphasis added.) Defendant relies on *City of Albuquerque v. Haywood,* 1998–NMCA–029, 124 N.M. 661, 954 P.2d 93 (1997), and *Taylor,* 1999–NMCA–022, 126 N.M. 569, 973 P.2d 246 to support his contentions for a special New Mexico standard. But Defendant's argument is again unpersuasive.

{23} Contrary to Defendant's characterization of New Mexico case law, this Court in *Taylor* stated that "an officer's suspicions may broaden during an investigatory stop to include matters *unrelated to the initial reason for the stop*," if his observations "cause the officer reasonable suspicion." 1999–NMCA–022, ¶ 21, 126 N.M. 569, 973 P.2d 246 (emphasis added). This Court was explicit in *Taylor* that its holding did not, "in any way, limit an officer's ability to pursue matters that arise during the course of the stop which cause the officer reasonable suspicion." *Id.* We recognized that an officer may expand the scope of his detention beyond that which is reasonably related to the circumstances that justified his initial stop, if the officer has a reasonable and articulable suspicion that other criminal activity has been or may be afoot. *Id.* ¶ 20. The officer may investigate evidence of another crime that becomes apparent during a routine investigatory stop. *Id.* Accordingly, our opinion in *Taylor* simply does not stand for the proposition asserted by Defendant.

{24} In *Haywood*, we affirmed a suppression order, but only because the district court found that nothing had occurred during the lawful portion of the stop to justify expanding the questioning. 1998–NMCA–029, ¶¶ 15–16, 18, 124 N.M. 661, 954 P.2d 93. However, as we later made clear in *State v. Chapman*, 1999–NMCA–106, ¶ 15, 127 N.M. 721, 986 P.2d 1122, an officer may reasonably pursue a matter that does arise during the initial investigatory phase whether or not related to the reason for the initial stop.

{25} None of these opinions are helpful to Defendant. They do not appear to grant any greater protection than the federal constitution with regard to investigatory detentions and limited searches for a secondary VIN. Our decisions in *Chapman* and *Taylor* were based solely upon the federal constitution. The opinion in *Haywood* makes a passing reference to the New Mexico Constitution, but merely as a companion to the Fourth Amendment. Defendant has not directed us to any legal authority that, in context, interprets our state constitution more expansively than the federal, or that persuades us to take a different course.

### Section 66–3–507(B)

{26} Defendant looks to New Mexico statute for evidence of a public policy in favor of a more expansive interpretation of the New Mexico Constitution. *See, e.g.*, Section 66–3–507(B). Defendant also argues that Officer Argo's conduct violated Section 66–3–507(B), and that, pursuant to the statute, the search for a secondary VIN should have been done with a warrant. This statute provides in pertinent part:

> When the inspection of a vehicle . . . by any law enforcement officer indicates that the manufacturer's serial number . . . has been removed, defaced, covered, altered or destroyed, that vehicle may be impounded for a period of time not to exceed ninety-six hours, unless part of that time shall fall upon a Saturday, Sunday or a legal holiday in which case the vehicle may be impounded for a period of time not to exceed six days. At the expiration of the stated time period, the vehicle or motor vehicle shall be returned to the person from whom it was taken at no cost unless an ex parte order allowing continued impoundment is issued by a magistrate or district court judge after finding that probable cause exists to believe that the manufacturer's serial number, engine number or other distinguishing number or mark or identification mark or number placed thereon under assignment of the division has been removed, defaced, covered, altered or destroyed.

Section 66–3–507(B).

{27} Applying the statute, Defendant argues that, in the absence of evidence that the VIN on the dashboard had been altered or defaced in some way, the officer, who was bound by the requirements of Section 66–3–507(B), had no grounds to open the door of the vehicle to look for a secondary VIN or to search without probable cause and a warrant. We disagree. In our view, Defendant interprets the scope of Section 66–3–507(B) far too broadly and Officer Argo's options, when faced with the possibility of auto theft, far too narrowly.

{28} Section 66–3–507(B) addresses the right of a law enforcement officer to impound

a vehicle when the officer suspects that a VIN has been altered or replaced. Because Defendant lacked registration papers for the vehicle and the computer check confirmed the wrong license plate, Officer Argo had much more than a suspicion that the VIN might have been defaced or altered. These facts suggested that Defendant might have stolen the vehicle. The fact that the vehicle may have been stolen removed the situation from any strictures arguably imposed by Section 66–3–507(B), which are directed at removing vehicles with altered or defaced VINs. *See Guebara,* 119 N.M. at 668, 894 P.2d at 1024 (indicating that when the primary VIN is obscured, an officer should proceed with impoundment under Section 66–3–507(B), rather than intruding into the vehicle). The statute simply does not apply to this case.

{29} Moreover, we are not impressed with Defendant's argument that Section 66–3–507(B) somehow articulates a legislative policy in favor of greater protection to a driver under the New Mexico Constitution than under the federal constitution. The statute is a grant of additional police power to law enforcement authorities to impound vehicles with altered VINs and eventually to confiscate them as contraband. *See State ex rel. Dep't of Pub. Safety v. One 1986 Peterbilt Tractor,* 1997–NMCA–050, ¶¶ 15, 19, 123 N.M. 387, 940 P.2d 1182 (holding Section 66–3–507(B) requires law enforcement officers to remove from New Mexico highways vehicles and/or motor vehicle engines having altered VINs). The statute is part of a series of criminal statutes aimed at preventing and punishing car theft. *See* NMSA 1978, §§ 66–3–501 to –08 (1978, as amended through 1998). Far from enhancing individual rights, the statute does not even require a judicial finding of probable cause until the impoundment exceeds six days. Accordingly, we reject Section 66–3–507(B) as a source of public policy that would cause us to read into Article II, Section 10 of the New Mexico Constitution any greater protections for the privacy rights of individuals, in the context of the present case, than those provided by the Fourth Amendment.

**CONCLUSION**

{30} We affirm the district court's denial of Defendant's motion to suppress, and consequently we affirm Defendant's conviction.

{31} **IT IS SO ORDERED.**

WE CONCUR: A. JOSEPH ALARID and IRA ROBINSON, Judges.