2003-NMCA-112

76 P.3d 1124

**STATE of New Mexico, Plaintiff–Appellee,**

v.

**Jaclyn DURAN, Defendant–Appellant.**

**No. 22,611.**

Court of Appeals of New Mexico.

July 31, 2003.

Certiorari Granted, No. 28,241, Sept. 3, 2003.

Patricia A. Madrid, Attorney General, Patricia Gandert, Assistant Attorney General, Santa Fe, NM, for Appellee.

Lawrence W. Allred, Michael W. Lilley, Lilley Law Offices, Las Cruces, NM, for Appellant.

## OPINION

ALARID, Judge.

{1} This appeal requires us to decide whether Defendant's constitutional right to be free from unreasonable searches and seizures was violated when, in the course of a routine traffic stop, Defendant and her passenger were separated and repeatedly questioned about their itinerary. We hold that the questioning of Defendant and her passenger was neither reasonably related to the purposes of the stop nor based upon particularized and objective factors giving rise to a

reasonable suspicion that criminal activity was afoot. We further hold that Defendant's consent to a subsequent search of the car was tainted by the unconstitutional questioning. We therefore reverse the trial court's order refusing to suppress marijuana subsequently seized during a search of Defendant's car.

## BACKGROUND

{2} On the afternoon of December 10, 2000, Defendant, Jaclyn Duran, and a passenger, Kate Williams, were driving northeast on Highway 26 in a 1987 Chevrolet Camaro hatchback. The car had a temporary registration permit affixed to the inside of the upper left-hand corner of the hatchback window. Defendant passed New Mexico State Police Officer Beau Johnston, whose car was parked on the side of Highway 26. Officer Johnston pursued Defendant's car for the purpose of determining why the car did not display a license plate. As he caught up to Defendant's car he noticed a piece of paper in the upper left corner of the rear window. He assumed it was a New Mexico temporary permit, but was not sure.

{3} After stopping Defendant's car, Officer Johnston parked his patrol car approximately twenty-five to thirty feet behind Defendant's car. He left his patrol car and approached Defendant's car from the passenger side.[1] Speaking through the open passenger-side window, Officer Johnston explained that he had stopped Defendant's car because the temporary registration permit was placed too high on the rear window to be visible. He asked Defendant for her driver's license, car registration, and proof of insurance; he asked Williams for identification as well. Officer Johnston noticed a jack, some assorted tools, an overnight bag, and a cellular phone plugged into the console. He also noticed the slight odor of gasoline. He looked at the temporary permit, which stated that Defendant was the purchaser of the car. Officer Johnston also noted that the temporary permit had not expired.

{4} Defendant was unable to produce proof of insurance. Officer Johnston directed Defendant to accompany him back to his patrol car. Williams remained in the car. On the way back to the patrol car, Officer Johnston pointed out to Defendant how the position of the temporary permit made it hard to read.

{5} At the patrol car, Officer Johnston reviewed the bill of sale that Defendant had produced. He noticed that it was handwritten, apparently with a "Sharpie" marker. Although most bills of sale he encountered were typewritten or computer-generated, it was not unusual to encounter a handwritten bill of sale. As he reviewed the paperwork, he asked Defendant about her itinerary. She explained that she and Williams were on their way to Las Cruces from Silver City. In Officer Johnston's view, his initial questioning of Defendant regarding her itinerary was "casual conversation."

{6} Officer Johnston was aware that Highway 26 is an indirect route from Silver City to Las Cruces. The most direct route from Silver City to Las Cruces is to take Interstate 10 east from Deming. Officer Johnston knew that by taking Highway 26, Defendant would bypass a twenty-four-hour Border Patrol checkpoint on I–25 north of Las Cruces.

{7} Officer Johnston asked Defendant why she had taken an indirect route. Defendant explained that she had never gone to Las Cruces by taking Highway 26 through Hatch, and she wanted to see how long it took. Officer Johnston left Defendant standing by his patrol car and returned to Defendant's car to compare the VIN on the bill of sale with the VIN on the front dashboard of Defendant's car. He asked Williams where she and Defendant had been and where they were going. Williams responded that they had left Las Cruces and were on their way to Albuquerque to see some friends. Officer Johnston asked Williams where she and Defendant were coming from. Williams responded "Las Cruces." Officer Johnston asked Williams if she and Defendant had been anywhere else that day. Williams responded "no." Officer Johnston then asked Williams to identify more specifically her Albuquerque friends. Williams told Officer

---

1. Before stopping Defendant's car, Officer Johnston turned on a video recorder. As he approached the car, Officer Johnston turned on a microphone. We therefore have the benefit of an audio/video recording of the stop.

Johnston that her friends were Derrick and Jesse, who live on San Mateo in Albuquerque. Officer Johnston then asked Williams if Defendant knew Derrick and Jesse. Williams replied that she was not sure and that she did not know whom Defendant was planning to see.

{8} Officer Johnston returned to his patrol car, where Defendant was standing. He ran a warrant check on Defendant and Williams and began writing out a citation for failure to provide proof of insurance and a warning citation for improper display of the temporary permit. The returns on the warrant checks were "clear." Officer Johnston again asked Defendant about her itinerary. Defendant once again stated that she was on her way to Las Cruces from Silver City. She also mentioned that she had been visiting relatives in Silver City. She could not provide their specific street addresses. She explained that she and Williams were just out for a drive and wanted to see how long it would take to get to Las Cruces via Hatch.

{9} Officer Johnston asked Defendant if there had been a co-signer on the purchase of the car. Defendant said that her uncle, Roman Garcia had co-signed. Officer Johnston then pointed out that the signature on the bill of sale was for Ramon, not Roman, Garcia. Defendant replied that Officer Johnston was correct, but that she called her uncle Roman. Officer Johnston also asked Defendant about the price she had paid for the car and what year it was manufactured. Defendant hesitated, and suggested that the car was a 1987. She stated that she had paid $5,500 for the car.

{10} Officer Johnston noticed that Defendant, who was standing outside in the cold, windy December weather, seemed more nervous than was typical for a motorist in a traffic stop.

{11} Officer Johnston returned to Defendant's car and once again asked Williams about their travel plans. Williams again responded that she and Defendant were on their way from Las Cruces to Albuquerque. Officer Johnston returned to the patrol car, where he returned all of the documents to Defendant, and had her sign the citations. Officer Johnston asked Defendant whether she would mind answering a few more ques-

tions. When Defendant said she would not mind, Officer Johnston asked her yet again about her itinerary. She repeated her previous story, adding that she and Williams had spent the night with an aunt in Silver City. Defendant could not recall her aunt's address but remembered the aunt lived by a school.

{12} The foregoing circumstances led Officer Johnston to begin wondering whether Defendant and Williams were involved in criminal activity. Officer Johnston asked Defendant and Williams if there were any drugs in the car and both answered that there were not. Officer Johnston asked both Defendant and Williams if they would consent to a search of the car. Both gave their consent.

{13} Officer Johnston then looked under the rear of Defendant's car and inspected the area surrounding the gas tank. Officer Johnston noticed signs of recent work on the gas tank. A Border Patrol agent arrived with a drug-sniffing dog. The Border Patrol agent searched Defendant's car with the dog. Officer Johnston and the Border Patrol agent then used a fiber-optic scope to examine the inside of the gas tank. Officer Johnston observed what he believed to be drugs wrapped in plastic. Officer Johnston arrested Defendant and Williams. Thirteen vacuum-packed bundles of marijuana were recovered from the gas tank.

{14} Defendant was charged with possession of marijuana with intent to distribute and conspiracy. Defendant was subsequently charged with two counts of falsifying title documents. Defendant moved to suppress the marijuana. The trial court held an evidentiary hearing on the motion. At the hearing, the trial court watched and listened to approximately the first twenty minutes of the videotape of the stop. Officer Johnston was then called as a witness by the State. The trial court also received into evidence a copy of the bill of sale and Officer Johnston's written report of the stop. The trial court denied the motion to suppress in an order containing detailed findings of fact and conclusions of law. Thereafter, Defendant entered a conditional plea of guilty, reserving the right to appeal the following issues: (1) the validity of the traffic stop; (2) the scope

of Officer Johnston's questioning during the investigatory stop; and (3) the tainting of Defendant's consent to the search.

## DISCUSSION

 {15} On appeal from the district court's denial of a motion to suppress, we review to determine whether the law was correctly applied to the facts, viewing the facts in the light most favorable to the [State]. Findings of fact are reviewed to determine if they are supported by substantial evidence and legal conclusions are reviewed de novo. . . . The legal conclusion that the officer's actions were reasonable or justified is a mixed issue of law and fact which we review de novo.

*State v. Romero,* 2002–NMCA–064, ¶ 6, 132 N.M. 364, 48 P.3d 102 (citations omitted). "[D]efendants have the burden to raise an issue as to their illegal search and seizure claims. Once they have done so, the burden shifts to the [S]tate to justify the warrantless search [or seizure]." *State v. Baldonado,* 115 N.M. 106, 110, 847 P.2d 751, 755 (Ct.App. 1992) (citation omitted).

{16} The trial court found that:

14. At his patrol unit and while looking over the bill of sale to the vehicle given to him by the Defendant, the Officer conversed with the Defendant where she was going and where she was coming from. The Defendant said they had been in Silver City and were going to Las Cruces. . . .

15. Because Highway 26 is not a very direct route to Las Cruces from Silver City, the Officer asked again about [Defendant's] destination and was told the same thing and when asked about the indirect route, the Defendant said she had never been this way and wanted to see how long it took. . . .

16. The Officer returned to the Defendant's car to compare the VIN on the bill of sale with the number on the temporary sticker and the VIN on the front dash. On the way back to his patrol unit, the Officer stopped momentarily to ask the passenger Kate Williams about where they had been and where they were going. Kate Williams told the Officer they were going to Albuquerque, having left Las Cruces earlier in the day.

17. Back at the patrol unit, the Officer ran "wants and warrants" on the Defendant and her passenger [they were later reported to be clear] and began issuing the Defendant a citation for not having insurance and a warning citation for improper display of the temporary sticker. During this time, he again engaged the Defendant in conversation about where [she] had been and where she was going. She told the Officer the same thing she had said earlier, but also mentioned that they had been in Silver City visiting some of her relatives but was unable to tell him any specific addresses of her relatives.

These findings are not challenged.

{17} The trial court applied the law to the above facts in the following analysis:

In reviewing the videotape, it is clear that the Officer did not just stop the vehicle, advise them that they were stopped because the temporary sticker was misplaced, and then launch into questions about where they were coming from and going and whether they had any drugs or weapons. On the contrary, the videotape shows the Officer approaching the car, advising of the reasons for the stop, getting license, registration information, determining that the Defendant had no insurance while the Defendant was still in the car. While the Defendant and passenger were locating documents to give to the Officer, the tape clearly shows the Officer looking in the rear of the vehicle, where he obviously saw the tools and jack. He would also have been able to see the cellular phone at this time and would have been able to smell the raw odor of gasoline. With his training and experience, reasonable suspicion had already been aroused. He was entitled to pursue that suspicion with further questioning. He did not ask the Defendant about where she was going and coming from until the two of them were back at the patrol car. He did not ask about whether there were any drugs until after he returned all of her papers to her and asked her if she minded answering a few questions. The inconsistencies in the stories of the Defendant and passenger about where they were coming from and where they were going were justified by—

and merely supplemented—factors of reasonable suspicion that the Officer already had.

Some of the factors in and of themselves may have seemed innocent. However considered under the totality of the circumstances, including the training and experience of the Officer, they were sufficient to furnish reasonable suspicion for expanded questioning and the subsequent questions about drugs and consent to search.

■ {18} Defendant does not argue that the stop was not based upon a reasonable suspicion that the temporary permit was not properly displayed. NMSA 1978, § 66–3–18(B) (1998). Defendant also does not challenge Officer Johnston's conduct in requesting to see her registration papers, driver's license, and proof of insurance. There is no dispute that Defendant was unable to produce proof of insurance and that Defendant violated New Mexico law by driving without proof of insurance. NMSA 1978, § 66–5–205(B) (1998). The dispositive issue presented by Defendant's appeal is whether the arresting officer unduly expanded the scope of his investigation when he interrogated Defendant and Williams about their itinerary.

■ {19} Prior cases clearly establish that in the course of a routine traffic stop an officer may not expand the scope of questioning beyond the offenses justifying the stop unless the officer can identify particularized and objective factors giving rise to a reasonable suspicion that other criminal activity is afoot. *State v. Taylor*, 1999–NMCA–022, ¶¶ 18, 20, 22, 126 N.M. 569, 973 P.2d 246. While evidence of an officer's training and experience may be relevant to the officer's ability to derive particularized and objective indicia of criminal activity from seemingly innocent circumstances, *see State v. Guzman*, 118 N.M. 113, 116, 879 P.2d 114, 117 (Ct.App. 1994), the State bears the burden of demonstrating that the officer's training and experience have in fact resulted in a heightened awareness as opposed to merely reinforcing the officer's personal biases, *see State v. Vandenberg*, 2002–NMCA–066, ¶ 24, 132 N.M. 354, 48 P.3d 92, *cert. granted*, 132 N.M. 397, 49 P.3d 76 (2002).

■ {20} We reject the trial court's reasoning that Officer Johnston's reference to

training and experience was sufficient to convert the innocuous circumstances he observed—the cell phone, jack, overnight case, and the smell of gasoline—into particularized and objective factors giving rise to a reasonable suspicion of criminal activity. When the State relies upon an officer's training and experience to convert innocent circumstances into indicia of criminal activity, the officer must explain how the officer's training and experience enabled him to attribute special significance in facts that would seem innocent to a layperson. *People v. F. J.*, 315 Ill. App.3d 1053, 248 Ill.Dec. 716, 734 N.E.2d 1007, 1011 (2000). Without such testimony, a court is simply rubber-stamping the officer's judgment without carrying out its constitutional duty to insure that searches and seizures of citizens are supported by an objectively reasonable suspicion of criminal activity. We agree with Defendant that Officer Johnston did not adequately explain how the innocent items he observed in Defendant's car gave rise to an objectively reasonable suspicion of criminal activity. We cannot accept the trial court's legal conclusion that Officer Johnston had a constitutionally reasonable suspicion of drug-smuggling or other criminal activity when he began inquiring into Defendant's itinerary. *See State v. Galloway*, 116 N.M. 8, 9, 859 P.2d 476, 477 (Ct.App.1993) (recognizing that prolongation of detention at border checkpoint in order to question subject about travel plans must be supported by reasonable suspicion of criminal activity), *misapplication of federal law recognized in State v. Cardenas–Alvarez*, 2001–NMSC–017, ¶ 9, 130 N.M. 386, 25 P.3d 225 (recognizing misapplication of federal law, but acknowledging *Galloway* as "sound approach" under New Mexico Constitution).

{21} The State has not established how information about Defendant's itinerary was relevant to Defendant's failure to properly display the temporary permit or her inability to produce proof of insurance. Applying *Taylor*, we hold that no later than Officer Johnston's initial interrogation of Williams, the stop had expanded into a constitutionally-impermissible fishing expedition for evidence of criminal activity. 1999–NMCA–022, ¶¶ 28–29, 126 N.M. 569, 973 P.2d 246.

{22} The record indicates that approximately seventeen minutes expired from the

beginning of the stop to Officer Johnston's request that Defendant consent to a search of her car. We conclude that there was no attenuation between Officer Johnston's improper questioning of Defendant and Williams; and that consequently, Defendant's apparent consent to the search of her car was the fruit of Officer Johnston's illegal questioning of Defendant and Williams. *See id.*

## CONCLUSION

{23} We reverse the trial court's order denying Defendant's motion to suppress and remand for further proceedings consistent with this opinion.

{24} **IT IS SO ORDERED.**

WE CONCUR: JAMES J. WECHSLER, Chief Judge, and JONATHAN B. SUTIN, Judge.