2004-NMCA-067

93 P.3d 1

**STATE of New Mexico,
Plaintiff–Appellee,**

v.

**Jeuang Van DANG, Defendant–Appellant.**

**No. 22,982.**

Court of Appeals of New Mexico.

April 5, 2004.

Certiorari Granted, No. 28,634,
June 4, 2004.

Patricia A. Madrid, Attorney General, Ann M. Harvey, Assistant Attorney General, Santa Fe, for Appellee.

John B. Bigelow, Chief Public Defender, Trace L. Rabern, Assistant Appellate Defender, Santa Fe, for Appellant.

*OPINION*

KENNEDY, J.

{1} Police officers may not extend the scope of a traffic stop beyond the reasonable and articulable basis for the initial detention unless there arises a separate reasonable and articulable suspicion of criminal activity. If this happens, separate articulable facts must be present, leading to a reasonable suspicion of additional criminal activity. Further investigation of newly occurring suspicions must in turn be reasonably limited to the articulable facts at hand. If the scope of investigation is not reasonably limited by the articulable facts known to the investigating officer, evidence obtained thereby can be suppressed.

{2} Defendant appeals the denial of his motion to suppress MDMA/Ecstasy tablets found during a search of a rented automobile following a traffic stop on Interstate 40 (I–40). Defendant entered a conditional plea and was found guilty of possession of a controlled substance with intent to distribute contrary to NMSA 1978, § 30–31–22(A)(2) (1990). We hold that the district court's finding that the length and scope of Defendant's detention was reasonable under the circumstances of this case was not supported by substantial evidence, and further, that contrary to the district court's ruling, Defendant had standing to contest the search. For the reasons discussed below, we reverse the denial of Defendant's motion to suppress and remand for further proceedings.

**FACTS AND BACKGROUND**

{3} Corporal Darrick Shaw (Shaw), of the Tucumcari Police Department, is one of two Tucumcari officers who are members of the Region V Narcotics Task Force operating in the Tenth Judicial District. He has been so assigned for six years. He has participated in about fifteen drug arrests on I–40, 80 to 85% of which involved rental cars.

{4} On Thursday, October 12, 2000, at 12:20 p.m., Shaw was driving west on I–40 near the Tucumcari city limits when he saw a maroon Chevrolet going east that appeared to be exceeding the speed limit. Shaw made

a U-turn in the median and pursued the Chevrolet for about ten miles before pulling it over. Upon stopping the car, Shaw approached and requested that Defendant, who was driving the car, produce his driver's license and registration. Defendant produced a California driver's license and a rental contract for the car. When asked, Defendant knew that he had been stopped for speeding.

{5} Immediately upon stopping Defendant, Shaw asked Defendant to get out of the car while he "looked over the documents and asked [Defendant] some more, a little more detailed information about the trip he was taking to make sure there was no further criminal activity taking place other than the minor speeding." Shaw did not look at the rental contract carefully until after he questioned Defendant about his travel plans. He then noted that Defendant was not the person who rented the car, nor was Defendant listed on the rental contract as an additional driver authorized to use it. Shaw questioned Defendant further to "make sure everything was legit. [That Defendant] had legal possession of the vehicle and it wasn't possibly a stolen rental vehicle." Shaw asked where Defendant and his passenger were going and the purpose of the trip, who the passenger was, and how long Defendant had known the passenger. Defendant stated that his uncle in Houston had rented the car, and that he was going to Amarillo for a few days to visit another uncle with his girlfriend, who was the passenger in the car. From Amarillo, they were going to Houston to return the car and visit the uncle who had rented it. The documents showed that the car had been rented out of Houston.

{6} Shaw then left Defendant, approached the rental car and talked to Defendant's girlfriend. He felt there were discrepancies between her story and what he had been told by Defendant, particularly that he understood her to say that they were going to Amarillo and then back to California. Shaw asked her if she and Defendant lived together, and if she was going to Houston. Shaw said she talked about moving to Houston with Defendant if she was promoted and transferred by her company. Because of the discrepancies Shaw perceived between the stories, Defendant's nervousness and lack of eye contact, and what Shaw viewed as a problem with the rental contract, Shaw began to get suspicious. He never testified specifically as to the character of that suspicion.

{7} Shaw asked Defendant to join him in the police car while he wrote out the traffic citations. He gave them to Defendant. While in the car, Shaw checked Defendant's information for warrants, finding nothing.

{8} Shaw considered the absence of Defendant's name on the rental contract to be a "major flag" that there might be something wrong with Defendant "to be actually in custody of this vehicle." Shaw unsuccessfully tried to contact Avis, the rental company, to ascertain the status of the car and Defendant's authorization to drive it.. Shaw testified that he requested dispatch to contact Avis because "the person that actually rented the vehicle was not present." However, Shaw acknowledged that driving a car while not being on the contract is not in and of itself a crime. Defendant was never charged with possessing a stolen car. Defendant testified that he believed he had a legitimate right to be driving the vehicle.

{9} Shaw and Defendant got out of the police car; Defendant went to the rental car to get his address in Houston, returned and again stood at the roadside with Shaw. Shaw returned Defendant's license to him at this time. Shaw then instructed Defendant to wait there between the rental car and police car while he went back to talk further with Defendant's girlfriend.

{10} Shaw returned to Defendant after talking with his girlfriend and asked Defendant if there were any narcotics in the vehicle; Defendant responded that there were no narcotics. Shaw asked Defendant if there was any marijuana in the car; Defendant responded in the negative. Shaw asked if there was any cocaine, and Defendant again answered that there was not. Shaw continued, asking specifically if there was any heroin, methamphetamine, or a large amount of currency in the car; for the fourth time, Defendant responded in the negative. Shaw then asked Defendant if he would mind if

Shaw searched the car "for drugs or narcotics." Defendant said "no" and opened the trunk with the remote opener. Before looking in the trunk, Shaw asked Defendant's girlfriend if she knew of any drugs in the car. She said "no." Shaw told her that Defendant had given permission to search the car and asked for her permission, which she also gave him. Shaw then asked her to step out of the car, and she joined Shaw and Defendant by the trunk of the rental car.

{11} Shaw looked in the open trunk and saw what he considered "normal luggage." He removed the luggage from the trunk and searched it. The four bags contained "normal clothing" and items associated with people taking a "normal" trip. He then searched what he called the "area that the spare tire is not kept in." (Shaw did not recall whether he "checked the spare tire or went immediately to the area where the evidence was located.") Once Shaw pulled back the carpeting from the sides of the trunk, he found two nylon bags containing several thousand pills. The pills turned out to be Ecstasy, which is a controlled substance. The seizure occurred some thirty-two minutes after Defendant was first pulled over. At no time during the stop or its activities was Defendant uncooperative, nor did he try to flee.

{12} Defendant filed a motion to suppress the fruits of the search, asserting that the scope and duration of his detention was unlawful under both the United States and New Mexico Constitutions. The State responded alleging only that Defendant did not have standing and that he had consented to the search. Defendant's motion was denied. Defendant preserved his arguments concerning the duration and scope of the detention. He entered a conditional plea, retaining his right to appeal the denial of his motion to suppress, and timely filed this appeal.

{13} The district court's order denying the motion to suppress stated two legal conclusions: (1) that the length of the detention of Defendant's "person prior to the search" was reasonable given Shaw's attempts to contact Avis concerning the status of the car, and (2) Defendant had no standing to "con-

test the legality of the search of the vehicle itself."

## DISCUSSION

{14} This case involves the proper scope of a roadside search under *State v. Taylor*, 1999–NMCA–022, 126 N.M. 569, 973 P.2d 246, *State v. Jutte*, 1998–NMCA–150, 126 N.M. 244, 968 P.2d 334, and other similar cases, most recently *State v. Duran*, 2003–NMCA–112, 134 N.M. 367, 76 P.3d 1124, *cert. granted*, 134 N.M. 320, 76 P.3d 638 (Sept. 3, 2003). A district court's ruling concerning the legality of an initial stop and seizure presents a mixed question of law and fact. "Findings of fact are reviewed to determine if they are supported by substantial evidence and legal conclusions are reviewed de novo.... The legal conclusion that the officer's actions were reasonable or justified is a mixed question of law and fact which we review de novo." *State v. Romero*, 2002–NMCA–064, ¶ 6, 132 N.M. 364, 48 P.3d 102. We are not bound by a trial court's ruling when predicated upon a mistake of law.

### Defendant Has Standing to Contest His Detention and Police Actions That Flow From It

{15} Standing to contest a search is reviewed de novo.

> In ascertaining the standing of an individual to challenge the propriety of a search, the focus is on the person's legitimate expectations of privacy. In making this determination we ask first whether Defendant has exhibited a subjective expectation of privacy, and second, whether Defendant's expectation is one society will recognize as reasonable.

*State v. Soto*, 2001–NMCA–098, ¶ 7, 131 N.M. 299, 35 P.3d 304 (internal quotation marks and citation omitted).

{16} Although Defendant may not have standing to contest the search of the car because he may not have had a possessory or property interest in the car, he argues he has standing to seek suppression of the drugs seized because they were the fruit of his unlawful detention. *See United States v. DeLuca*, 269 F.3d 1128, 1132 (10th Cir.2001). To demonstrate standing in this way, Defen-

dant must first demonstrate that he was unlawfully detained under the Fourth Amendment, and that there is a factual nexus between the unlawful detention and the challenged evidence; namely that the evidence is the fruit or derivative evidence of that illegal detention. *Id.* at 1134. For the reasons outlined below, we hold that the detention of Defendant became constitutionally untenable when Shaw could no longer articulate suspicions that there was criminal activity afoot, and that the search of Defendant's car was the result of the impermissible detention. As a result, Defendant had standing to contest the search. We hold that Defendant met his burden of demonstrating standing to contest Shaw's search of the car under either method.

### Traffic Stops Are Seizures Implicating the Fourth Amendment. Further Activity Is Proscribed by the Extent to Which Particular Articulable Facts Support Suspicion of Other Criminal Activity

■ {17} Shaw, in pulling Defendant over for speeding after following him for ten miles, could lawfully detain him to check his license, registration, and insurance. *See State v. Romero,* 2002–NMCA–064, ¶ 9, 132 N.M. 364, 48 P.3d 102. Upon receiving Defendant's driver's license and the rental contract, Shaw had everything he needed to write up the traffic violations. *See State v. Anderson,* 107 N.M. 165, 167, 754 P.2d 542, 544 (Ct.App.1988).

■ {18} A traffic stop that detains a car and its occupants is a seizure that implicates the Fourth and Fourteenth Amendments. *See Delaware v. Prouse,* 440 U.S. 648, 654–55, 99 S.Ct. 1391, 59 L.Ed.2d 660 (1979). Where a police officer has a reasonable and objective basis for believing that criminal activity is afoot, he or she may briefly detain the subject to confirm or dispel the suspicion. *State v. Werner,* 117 N.M. 315, 317, 871 P.2d 971, 973 (1994). However, this Constitutional permission granted officers exists as an exception to the general rule that Fourth Amendment seizures must be supported by probable cause to arrest. *Terry v. Ohio,* 392 U.S. 1, 17 n. 12, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). The officer

executing the stop "may not expand the scope of questioning beyond the offenses justifying the stop unless the officer can identify particularized and objective factors giving rise to an objectively reasonable suspicion" that the subject is engaging or about to engage in other criminal behavior. *Duran,* 2003–NMCA–112, ¶ 19, 134 N.M. 367, 76 P.3d 1124; *see also State v. Taylor,* 1999–NMCA–022, ¶¶ 18, 20, 22, 126 N.M. 569, 973 P.2d 246.

{19} Shaw did not confine his concern to the traffic violations, but testified that he immediately had Defendant exit the car for questioning "to make sure there was no further criminal activity taking place other than the minor speeding." He did not testify what he then believed the "further criminal activity" might be. Prior to knowing anything about the rental contract, Shaw questioned Defendant about his travel plans. We have held this to be an impermissible expansion of an otherwise "routine" traffic stop. *Duran,* 2003–NMCA–112, ¶ 19, 134 N.M. 367, 76 P.3d 1124.

### The Rental Contract

■ {20} An officer may expand the investigation beyond the initial circumstances justifying detention "if the officer has a reasonable and articulable suspicion that other criminal activity has been or may be afoot." *Romero,* 2002–NMCA–064, ¶ 10, 132 N.M. 364, 48 P.3d 102; *Taylor,* 1999–NMCA–022, ¶ 20, 126 N.M. 569, 973 P.2d 246. "If evidence of another crime surfaces during a routine investigatory stop, the officer may proceed in a reasonable manner to investigate." *Romero,* 2002–NMCA–064, ¶ 10, 132 N.M. 364, 48 P.3d 102. We measure reasonable suspicion by an objective standard, examining the totality of the circumstances in order to determine whether the officer reasonably expanded the scope of the stop. *Id.* ¶ 11.

{21} After removing Defendant from the car and questioning him about his travels, Shaw noticed that Defendant's name did not appear on the car rental contract. He next extensively questioned Defendant's girlfriend. Shaw then took Defendant to his car, where he checked Defendant's license. Defendant was not wanted, nor was his driver's

license suspended. Shaw had his dispatcher try to call Avis to ascertain the relationship between Defendant and the car.

{22} In the face of a rental contract that did not list Defendant as an authorized driver of the car, the facts available to Shaw expanded to allow him to ascertain the nature of Defendant's possession of the car. Shaw's inquiry into Defendant's possession of and driving the rental car was inconclusive, perhaps leaving him with a suspicion that Defendant should not be in the car or driving it, but not probable cause to arrest Defendant for doing so. Going on this evidence, however, Shaw did not act unreasonably in detaining Defendant at this point. *See United States v. Sharpe*, 470 U.S. 675, 686, 105 S.Ct. 1568, 84 L.Ed.2d 605 (1985) (stating that police detention in an investigatory stop is appropriate where "the police diligently pursued a means of investigation that was likely to confirm or dispel their suspicions quickly"); *Werner*, 117 N.M. at 319, 871 P.2d at 975 (stating the importance of diligence in an investigation). Shaw agreed on cross-examination that he did not have enough information to infer that the car was stolen, but believed he had enough to inquire further. We agree.

**Detention Beyond the Speeding Ticket and "Authorized Driver" Problem**

{23} Entering into the "totality of the circumstances" calculation for us at this point is the extent of questioning Shaw engaged in at the roadside. Shaw's conduct separating driver and passenger and subjecting them to extensive and repeated questioning about their travel plans and purpose, the addresses of persons they saw or would see, their residence, and their relationship is far beyond the scope of information relating to the speeding ticket, but arguably related to whether a rental car is stolen or not.

{24} The problem with Shaw's conduct lies in the expansion of the investigation from unauthorized use of a rental car to a full-blown search for drugs. Following Shaw's writing up the tickets, Defendant went back to his car to get his Houston address, and returned to stand with Shaw at the roadside. Shaw returned Defendant's driver's license but then told Defendant to wait there between the rental car and the police car while he went back to talk with Defendant's girlfriend. Clearly at this point the traffic stop had ended, and Shaw was no longer dealing with the rental contract problem. At that time, Shaw had no legitimate further reason to detain Defendant, yet he specifically told Defendant that he was not to leave while he pursued further investigation by talking to Defendant's girlfriend yet again. At that point, approximately half an hour had expired, and Shaw had reached the factual limits of any reasonable suspicion to investigate further.

{25} On his return from talking to Defendant's girlfriend, Shaw immediately began questioning Defendant about drugs. Defendant answered that he possessed no drugs or large amounts of cash. Shaw then requested a search of the trunk for drugs or narcotics. To justify such an expansion of his investigation and Defendant's detention, there must be separate, objectively reasonable grounds giving rise to a reasonable suspicion that criminal activity is afoot. *See State v. Cardenas–Alvarez*, 2001–NMSC–017, ¶ 21, 130 N.M. 386, 25 P.3d 225.

{26} Again, we view the facts available to Shaw by an objective standard. The State attempts to rely on *State v. Chapman*, 1999–NMCA–106, ¶ 16, 127 N.M. 721, 986 P.2d 1122, to turn nervousness and a lack of eye contact into a reason for further investigation, but *Chapman* hinged on a detailed comparison between Chapman's behavior and that of other persons involved in minor traffic stops, leading the officer to believe that Chapman was "nervous, hostile, and aggressive." *Id.* ¶¶ 17–18. This is much more objective behavioral testimony than Shaw provided. Shaw's testimony amounts to no more than a degree of nervousness that our courts have consistently regarded as being innocuous behavior that is equally consistent with no culpable state of mind. *See State v. Vandenberg*, 2003–NMSC–030, ¶ 31, 134 N.M. 566, 81 P.3d 19; *State v. Pierce*, 2003–NMCA–117, ¶ 12, 134 N.M. 388, 77 P.3d 292. Here, we balance the character of Defendant's detention against the justification Shaw provided for continuing it to initiate

the search. *Id.; State v. Williamson*, 2000–NMCA–068, ¶ 14, 129 N.M. 387, 9 P.3d 70.

### Expanding the Scope of the Detention to Search for Drugs Was Impermissible

{27} Looking at the totality of circumstances surrounding Shaw's conduct in this case, from the outset, we see something significantly more than just an investigation centered on speeding and a questionable rental car contract. Shaw followed Defendant for ten miles. Upon pulling him over for speeding, Shaw immediately removed Defendant from the car because of a concern for other "criminal activity." He extensively questioned Defendant about where he had come from, his destination, and whom he was going to see before Shaw even checked the rental contract. *See Duran*, 2003–NMCA–112, ¶¶ 1, 19, 134 N.M. 367, 76 P.3d 1124 (holding such questioning to be constitutionally impermissible).

{28} Under *Taylor*, police officers may expand their investigation to "include matters unrelated to the initial reason for the stop," if their observations "cause the officer[s] reasonable suspicion." 1999–NMCA–022, ¶ 21, 126 N.M. 569, 973 P.2d 246. However, where nothing has occurred during the lawful portion of the stop based on reasonable and articulable facts arising from the situation to justify expanding the questioning, the officer is precluded from beginning an investigation of things he is not able to articulate. *City of Albuquerque v. Haywood*, 1998–NMCA–029, ¶¶ 15–16, 18, 124 N.M. 661, 954 P.2d 93. In *Jutte*, we pointedly stated that "[d]iligence in the investigation is key, and the expansion of the investigation to look, search, or fish elsewhere is not contemplated for investigatory stops." 1998–NMCA–150, ¶ 18, 126 N.M. 244, 968 P.2d 334 (internal quotation marks and citation omitted).

### The Search Was the Extension of an Unlawful Detention

{29} In this case, the detention of Defendant became illegal at the point Shaw's facts justifying further detention based on his suspicion concerning the car had petered out. Although finished with the speeding ticket and unable to justify further detention based on the discrepancy in the car rental contract, Shaw instructed Defendant to wait further and launched a new investigation for drugs. *Cf. State v. Hernandez*, 1997–NMCA–006, ¶ 25, 122 N.M. 809, 932 P.2d 499 (noting that "the expansion of the investigation to look search, or fish elsewhere is not contemplated for investigatory stops").

{30} His testimony shows his subjective basis expanding his detention of Defendant, considering that he had served three years on an interagency drug task force and 80–85% of the drug arrests he had made involved rental cars. He immediately separated Defendant and his passenger upon stopping him for speeding to investigate "further criminal activity." Shaw described the well in the car's trunk as "an area that the spare tire is *not* kept in[,]" without then recalling if he ever looked in that particular place at all. His previous drug arrests and his experience that car rental companies usually request impoundment of a car do not lead to his surmising that in the absence of other proof, Defendant was not a proper driver of the car. Articulable facts are required to back up these assumptions if we are to allow them to support the detention of Defendant. This Court recently discussed this issue stating:

> While evidence of an officer's training and experience may be relevant to the officer's ability to derive particularized and objective indicia of criminal activity from seemingly innocent circumstances, the State bears the burden of demonstrating that the officer's training and experience have in fact resulted in a heightened awareness as opposed to merely reinforcing the officer's personal biases.

*Duran*, 2003–NMCA–112, ¶ 19, 134 N.M. 367, 76 P.3d 1124 (citations omitted).

{31} When Shaw had exhausted the means of investigation by which he could confirm or dispel his suspicion quickly, he had no reasonable basis to detain Defendant any longer. *See Sharpe*, 470 U.S. at 686, 105 S.Ct. 1568; *Jutte*, 1998–NMCA–150, ¶ 19, 126 N.M. 244, 968 P.2d 334. Apart from a hunch, Shaw had no specific reason to undertake a

drug investigation once he could not make a case for car theft.

{32} The State argues that Shaw was aware of specific articulable facts and had rational inferences based on those facts. Specifically, Shaw testified that Defendant was driving a rental car which he could not show that he had the authority to drive, he was nervous and avoided eye contact, and he and his girlfriend had different stories concerning their destination. The State argues that this constitutes a drug courier profile, although it did not make this argument below and does not sufficiently demonstrate the rationality of Shaw's inferences.

{33} Shaw's reference to his training and experience was insufficient to show that the observations and circumstances surrounding the traffic stop—Defendant's nervousness, the car rental contract without Defendant's name, and inconsistent stories between the passenger and Defendant—gave rise to a reasonable suspicion of criminal activity. "When the State relies upon an officer's training and experience to convert innocent circumstances into indicia of criminal activity, the officer must explain how the officer's training and experience enabled him to attribute special significance in facts that would seem innocent to a layperson." *Duran*, 2003–NMCA–112, ¶ 20, 134 N.M. 367, 76 P.3d 1124. Here, Shaw did not sufficiently explain how the circumstances surrounding the routine traffic stop gave rise to an objectively reasonable suspicion of drug-smuggling or other criminal activity when he questioned Defendant's travel plans. Shaw had not even read the rental contract when he questioned Defendant about his itinerary.

{34} We hold that Shaw's interrogation of Defendant about drugs, after all reasons to hold him further were gone, expanded the stop into an unconstitutional fishing expedition for evidence of criminal activity. Under *Taylor*, this is impermissible conduct, and consequently, Defendant's apparent consent to the search of his trunk was the fruit of Shaw's illegal questioning of Defendant. 1999–NMCA–022, ¶¶ 28–29, 126 N.M. 569, 973 P.2d 246. Accordingly, the drugs found as a result of the search must be suppressed.

**Defendant's Consent to Search Was Unconstitutionally Tainted**

{35} The State argues that the search is validated by Defendant's consent. However, admission of evidence obtained after an illegal arrest or detention is excluded "except in very limited circumstances." *Jutte*, 1998–NMCA–150, ¶ 22, 126 N.M. 244, 968 P.2d 334. The evidence obtained by Defendant's consent is admissible "only if it is determined that the consent was both voluntary and not an exploitation of the prior illegality." *Id.* ¶ 21 (internal quotation marks and citation omitted). Defendant's consent removes the taint of Shaw's illegal action only if there is "sufficient attenuation" between the detention and consent. *Id.* ¶ 22 (internal quotation marks omitted). In this case, as in *State v. Bedolla*, 111 N.M. 448, 456, 806 P.2d 588, 596 (Ct.App.1991), there was no attenuation. Under the facts of this case, Shaw went from territory where he had specific facts that indicated a possible criminal impropriety about Defendant's possession of a rental car, to interrogation about and a detailed search for drugs without a reasonable suspicion of drug possession.

## CONCLUSION

{36} We reverse the district court's order denying Defendant's motion to suppress. We hold that suppression was warranted, and remand this case so Defendant can withdraw his plea, and for further proceedings consistent with this opinion. *See State v. Hodge*, 118 N.M. 410, 415, 882 P.2d 1, 6 (1994) (stating that where a defendant enters a conditional guilty plea, he or she is permitted to withdraw the plea after prevailing on appeal).

{37} **IT IS SO ORDERED.**

WECHSLER, C.J. and FRY, J., concur.