2005-NMSC-033

120 P.3d 830

**STATE of New Mexico, Plaintiff–Petitioner,**

v.

**Jeuang VAN DANG, Defendant–Respondent.**

**No. 28,634.**

Supreme Court of New Mexico.

Aug. 31, 2005.

Patricia A. Madrid, Attorney General, Ann M. Harvey, Assistant Attorney General, Santa Fe, NM, for Petitioner.

John Bigelow, Chief Public Defender, Trace L. Rabern, Assistant Appellate Defender, Santa Fe, NM, for Respondent.

## OPINION

CHÁVEZ, Justice.

{1} Jeuang Van Dang (Defendant) was stopped on Interstate 40 by a New Mexico

State Police Officer for driving eighty-four miles per hour, nine miles per hour over the speed limit. When asked for his driver's license, proof of insurance and registration, Defendant produced his California driver's license and a vehicle rental contract. Although the rental contract is not part of the record, it is undisputed that the rental contract did not list Defendant as the renter or as an authorized driver. For approximately twenty-five minutes following the stop, the officer reviewed the rental contract, questioned Defendant and his passenger regarding their travel plans, contacted dispatch for a wants and warrants check, issued a speeding citation and had dispatch make efforts to contact the rental company to investigate whether the vehicle was stolen. Before hearing back from dispatch that they were unable to make contact with the rental company, the officer asked Defendant and the passenger specific questions about whether they were in possession of any drugs. After both denied being in possession of drugs, the officer asked them if he could search the vehicle. Both consented and Defendant opened the trunk compartment with a remote key. The officer searched luggage located in the trunk, then pulled back the carpeting on the side of the trunk and found an estimated 20,000 small pills later identified as ecstasy.

{2} Defendant was charged with possession of a methamphetamine substance with intent to distribute, contrary to NMSA 1978, Section 30–31–22(A)(2) (1990), and with conspiracy, contrary to NMSA 1978, Section 30–28–2 (1979). Defendant filed a motion to suppress the evidence, arguing that the search was unconstitutional because the scope and duration of his detention were unlawful and that his consent was tainted by this illegality. At the evidentiary hearing, the officer testified Defendant told him that Defendant's uncle had rented the vehicle and knew Defendant was driving the vehicle. On direct examination, Defendant was asked whether he believed he had a legitimate right to be driving the rental vehicle and he answered yes. Defendant also responded yes when asked if he felt like he had a right to privacy in the car and its contents. However, Defendant did not explain why he held such a belief, nor did he testify that his uncle

had rented the vehicle and gave him permission to drive the vehicle. Defendant did not produce his uncle to testify regarding the rental of the vehicle and the circumstances of Defendant's alleged permissive use. No other evidence was presented verifying the story Defendant gave to the officer at the scene of the stop.

{3} The district court judge denied the motion to suppress for two reasons. One, the judge found Defendant did not have standing to challenge the search of the vehicle because Defendant failed to prove he had authority to be in possession of the vehicle he was driving at the time of the search. Two, the judge found the length of detention prior to the search of the vehicle was reasonable given the officer's attempt to contact the rental car agency. A plea and disposition agreement was filed in which Defendant conditionally plead guilty to possession of a controlled substance (methamphetamine) with intent to distribute and reserved his right to appeal the district court's order denying his motion to suppress.

{4} On appeal, the Court of Appeals acknowledged that Defendant may have lacked standing to contest the search of the vehicle because he may not have had a possessory or property interest in the vehicle, but concluded that he had standing to seek suppression of the drugs seized if the seizure was the fruit of an unlawful detention. *State v. Dang*, 2004–NMCA–067, ¶ 16, 135 N.M. 719, 93 P.3d 1. The Court of Appeals held that Defendant's detention became unconstitutional as soon as the officer could no longer articulate a suspicion of criminal activity, and that the resulting search of the car grew out of the impermissible detention. *Id.*

{5} We granted the State's Petition for Certiorari and reverse. By failing to demonstrate that he had permission from either the rental car agency or the renter to use the vehicle, Defendant failed to establish standing to challenge the search of the rental vehicle. While Defendant has standing to challenge the constitutionality of his own detention, we conclude that the twenty-five-minute detention was lawful because the officer had the right to detain Defendant pend-

ing his reasonable investigation of the circumstances surrounding what appeared to be an unauthorized use of a rental vehicle. The officer's questioning about drugs was based on specific, articulable facts giving rise to a reasonable suspicion that Defendant may have been transporting drugs. Consequently, the duration and scope of Defendant's detention were reasonable under the circumstances. We hold the district court properly denied Defendant's motion to suppress.

### Defendant Lacks Standing to Challenge the Constitutionality of the Search

{6} The standard for reviewing the denial of a motion to suppress is "whether the law was correctly applied to the facts, viewing them in a manner most favorable to the prevailing party." *State v. Eli L.,* 1997–NMCA–109, ¶ 6, 124 N.M. 205, 947 P.2d 162 (quotation marks and quoted authority omitted). A district court's denial of a motion to suppress will not be reversed if it is supported by substantial evidence, the only exception being if the ruling was incorrectly applied to the facts. *State v. Soto,* 2001–NMCA–098, ¶ 6, 131 N.M. 299, 35 P.3d 304.

{7} The threshold question raised by the State is whether Defendant has standing to challenge the constitutionality of the vehicle search. To establish standing, Defendant must demonstrate that he had a subjective expectation of privacy that society will recognize as reasonable. *Id.* ¶ 7. We must examine the entire record surrounding the arrest, search and seizure to determine whether Defendant proved a legitimate expectation of privacy. *State v. Leyba,* 1997–NMCA–023, ¶ 10, 123 N.M. 159, 935 P.2d 1171 (internal citation omitted). Generally, one who owns, controls, or lawfully possesses property has a legitimate expectation of privacy. *State v. Esguerra,* 113 N.M. 310, 313, 825 P.2d 243, 246 (Ct.App.1991); *see Rakas v. Illinois,* 439 U.S. 128, 148, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978) (holding that where occupants of a vehicle asserted neither a property nor a possessory interest in the automobile, nor an interest in the property seized, they were not entitled to suppression of seized items in their subsequent robbery prosecution).

{8} Defendant cites to *Leyba* and *Soto* as cases exemplifying when a person who is not the owner of the vehicle has standing to challenge the constitutionality of a search of the vehicle. In *Leyba,* after receiving several tips that the defendant and two other individuals, Michael Lucero and Alex Trujillo, were selling heroin out of a motel room, the Santa Fe County Sheriff's Department set up a surveillance of the motel room, which included listening to the defendant's conversations. 1997–NMCA–023, ¶ 2, 123 N.M. 159, 935 P.2d 1171. As a result of the information gathered, the Sheriff's Department obtained a warrant to search the motel room and a Buick Regal owned by Lucero that was parked outside the motel. *Id.* The defendant introduced the affidavit of one of the surveillance officers stating that both the defendant and Lucero used the Buick and that defendant told Lucero that he should " 'not mess with that stuff' " in the Buick or she would have to re-weigh it. *Id.* ¶ 14. The Court of Appeals held that this evidence supported the notion that the defendant was an on-going, permissive user of the vehicle, and that through her relationship with Lucero she exerted control over the contents of the Buick owned by Lucero. *Id.*

{9} In *Soto,* after the Carlsbad police located an Oldsmobile that matched the description of one observed in the vicinity around the time of a burglary, officers went to the workplace of the Oldsmobile's owner, Vera Rodriguez, to seek her consent to search the vehicle. 2001–NMCA–098, ¶¶ 2–4, 131 N.M. 299, 35 P.3d 304. Rodriguez, who was dating and living with the defendant, consented to a warrantless search of the vehicle, at which time the officers discovered items they believed had been stolen. *Id.* ¶ 4. While the parties disputed whether the ensuing search or searches exceeded the scope of Rodriguez's consent, relevant to our analysis is the court's holding that defendant had standing to challenge the search in light of the fact that he and Rodriguez lived together, their property was mingled together, the Oldsmobile was their only vehicle and they both used it on a daily basis. *Id.* ¶ 8. The court held that the defendant had a subjective expectation of privacy in the vehi-

cle because he was a regular, permissive user of the vehicle, and "through his ongoing relationship with Rodriguez, he exerted control over the car and its contents." *Id.*

{10} In both *Leyba* and *Soto,* the defendants were found to have standing to challenge the constitutionality of the search because the evidence adduced at the hearings demonstrated the defendants were regular, permissive users of the vehicles and exerted control over those vehicles and their contents. However, neither case involved a rental vehicle driven by an individual who was neither the renter nor listed on the rental contract as authorized to drive the vehicle. Perhaps more relevant to our analysis is *United States v. Smith,* 263 F.3d 571 (6th Cir.2001), in which the defendant was held to have standing to challenge the search of a rental vehicle despite the fact that the vehicle was rented to the defendant's wife and defendant was not listed as an authorized driver. In *Smith,* the defendant informed the officer that his wife had rented the vehicle, and the officer noted that the address listed on the rental agreement matched the address on the defendant's driver's license. *Id.* at 575. A subsequent search of the rental car produced over 5,000 grams of methamphetamine and a quantity of cocaine. *Id.* at 576. In response to the defendant's motion to suppress, the prosecution questioned the defendant's standing to challenge the constitutionality of the search since, among other things, he was not listed on the rental contract. *Id.* at 581. The court held the defendant had a reasonable expectation of privacy in the vehicle because 1) the defendant had personally reserved the vehicle with the rental company, paid for the vehicle with his own credit card, and received a confirmation number used by his wife to pick up the vehicle, and therefore he had established a business relationship with the rental company; 2) the defendant was a licensed driver; 3) the defendant was able to present the rental agreement to the officer and to provide information regarding the vehicle; and 4) the defendant was given per-

mission to drive the vehicle by someone with whom he had an intimate relationship and who was listed as an authorized driver. *Id.* at 582, 586–87.[1]

{11} By contrast, a defendant who was driving a rental vehicle without being either the renter or identified as an authorized user in the rental contract was held not to have standing in *United States v. Muhammad,* 58 F.3d 353, 355 (8th Cir.1995) (per curiam). In *Muhammad,* the defendant moved to suppress cocaine seized from a rental car he was driving that had been leased to another individual, Candace Jordan. *Id.* at 354–55. Both parties agreed that to give rise to an objectively reasonable expectation of privacy, the defendant had to present some evidence of consent or permission from the "lawful owner/renter." *Id.* at 355. During the suppression hearing, the defendant did not call Jordan as a witness to verify she had granted him permission, nor did he claim that Jordan had authorized his operation of the vehicle. *Id.* Rather, the defendant's principal argument was that the lack of evidence that the car had been stolen met his burden of showing acquiescence by Jordan to use the vehicle. *Id.* The court held that because the defendant had not presented any direct evidence that Jordan had granted him permission to operate the vehicle and the government's evidence did not create any inference of consensual possession, the defendant failed to demonstrate a reasonable expectation of privacy in the vehicle. *Id.*

{12} We agree that in a case involving a rental vehicle where the driver is neither the renter nor listed on the rental contract as an authorized driver, the burden is on the driver to present evidence of consent or permission from the lawful owner or renter to be in possession of the vehicle in order to establish standing to challenge a search of the vehicle. As in *Muhammad,* Defendant in this case neither called his uncle as a witness at the suppression hearing to verify he had granted Defendant permission, nor even made the claim that his uncle had authorized his opera-

1. While the Court noted that as a general rule, an unauthorized driver of a rental vehicle does not have a legitimate expectation of privacy in the vehicle, it refused to adopt a bright-line test for such cases based solely on whether the driver of a rental vehicle is listed on the rental agreement as an authorized driver. *Smith,* 263 F.3d at 586.

tion of the vehicle. Having failed to make this threshold showing, Defendant fails to establish standing to challenge the search of the vehicle.

## Defendant Was Not Unlawfully Detained

{13} Defendant next argues that he has standing to challenge the constitutionality of his detention, which he argues was unconstitutional both in duration and scope, making his consent involuntary and the search of the trunk unlawful. The Court of Appeals agreed with Defendant and held that although the extensive questioning of the Defendant and his passenger may have been related to whether the rental car was stolen, the officer impermissibly expanded the scope of the detention to inquire about drugs, and consequently Defendant's consent was tainted. *Dang*, 2004–NMCA–067, ¶¶ 29, 31, 34–35, 135 N.M. 719, 93 P.3d 1. We agree that a person has standing to challenge the constitutionality of his or her detention. *See State v. Hernandez*, 1997–NMCA–006, ¶ 17, 122 N.M. 809, 932 P.2d 499 ("Defendant unquestionably has standing to challenge her own unlawful arrest.").

{14} In determining whether there is reasonable suspicion for the detention and questioning about drugs, we view the evidence in the light most favorable to the district court ruling. *State v. Guzman*, 118 N.M. 113, 116, 879 P.2d 114, 115 (Ct.App. 1994). To determine whether the detention was justified, we review the totality of the circumstances as a matter of law. *Id.*

{15} The Court of Appeals acknowledged, and we agree, that because Defendant's name did not appear on the rental contract, the officer had a right to investigate whether the vehicle was stolen. *Dang*, 2004–NMCA–067, ¶ 23, 135 N.M. 719, 93 P.3d 1. As part of that investigation we believe that questions about travel plans would be reasonable. *See State v. Duran*, 2005–NMSC–034, ¶¶ 35–36, 138 N.M. 414, 120 P.3d 836. ("The particular facts of each stop and the intrusiveness of the questioning will dictate what questions are reasonable or unreasonable.") However, we disagree with the Court of Appeals that once the officer returned Defendant's driver's license and issued Defendant

a citation for speeding, the officer had exhausted his lawful investigation of the problem regarding the car rental contract. *Id.* ¶ 24. Turning first to the duration of the detention, the district court found that "the length of detention of Mr. Dang's person prior to the search of the vehicle was reasonable given the officer's attempt to contact the rental car agency." At the time the officer cited Defendant for speeding, the officer had still not heard back from the rental car company. The officer testified that he asked dispatch to contact the rental car company because he did not know if the vehicle was stolen. The officer testified it was his experience that when a rental car agency is notified that a rental vehicle is being driven by someone not identified in the contract and the renter is not present, the agency will ask the officer to impound the vehicle. In light of these facts and the officer's experience, having not heard back from the rental agency, the officer's detention of Defendant for twenty-five minutes was proper.

{16} The scope of the detention, and specifically whether the officer could then lawfully inquire about drugs, is a more difficult question. Important to our analysis is whether the training and experience of the officer enhanced his ability to derive and articulate particularized and objective indicia of criminal activity. *See Guzman*, 118 N.M. at 116, 879 P.2d at 117; *Brown v. Texas*, 443 U.S. 47, 52, n. 2, 99 S.Ct. 2637, 61 L.Ed.2d 357 (1979) (distinguishing the facts of that case, in which the officer was unable to point to facts supporting a reasonable suspicion, from one in which a trained, experienced police officer is "able to perceive and articulate meaning in given conduct which would be wholly innocent to the untrained observer"). In this case the officer had eleven years of experience, of which he had spent eight years in the drug interdiction program actively participating in exercises on the freeways in various counties. The officer had been a member of the Region V Task Force in the relevant district for almost three years. He estimated making an average of five drug trafficking arrests per year during that time, with up to eighty-five percent of those arrests involving rental cars. He testi-

fied that in his experience, it was common to find rental cars being used to transport drugs, frequently where the actual renter of the vehicle was not present. The officer testified that he became suspicious about Defendant's activities based on 1) the fact that Defendant was not on the rental contract; 2) the inconsistent stories from Defendant and the passenger regarding their travel plans; 3) the circumstances surrounding Defendant's alleged permissive use of the vehicle; and 4) Defendant's nervousness. In light of the totality of the circumstances and the officer's training and experience, we conclude that the officer's suspicion about drugs was based on specific, articulable facts and the reasonable inferences that could be drawn from those facts. *See State v. Williamson,* 2000–NMCA–068, ¶ 10, 129 N.M. 387, 9 P.3d 70 (holding officer did not exceed the scope of investigation by inquiring about drugs when the circumstances justified a reasonable suspicion). Because the detention took no longer than necessary and because the officer's questions arose from a reasonable suspicion, we hold that both the duration and scope of the detention were reasonable under the circumstances.

### Conclusion

{17} Defendant lacks standing to challenge the search of the vehicle because he failed to present any evidence establishing a reasonable expectation of privacy in the rental vehicle. While he has standing to challenge his own detention, the duration and scope of his detention were lawful in light of the circumstances of this case, so the evidence discovered in the trunk was not the fruit of an unlawful detention. We reverse the Court of Appeals and affirm the district court.

{18} **IT IS SO ORDERED.**

WE CONCUR: RICHARD C. BOSSON, Chief Justice, PAMELA B. MINZNER, PATRICIO M. SERNA, and PETRA JIMENEZ MAES, Justices.