This memorandum opinion was not selected for publication in the New Mexico Appellate Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**STATE OF NEW MEXICO,**

    Plaintiff-Appellee,

v.                                   **NO. 34,853**

**JOE HOLGUIN,**

    Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF DOÑA ANA COUNTY**
**Marci E. Beyer, District Judge**

Hector H. Balderas, Attorney General
Santa Fe, NM
Walter Hart, Assistant Attorney General
Albuquerque, NM

for Appellee

Bennett J. Baur, Chief Public Defender
Kathleen T. Baldridge, Assistant Appellate Defender
Santa Fe, NM

for Appellant

**MEMORANDUM OPINION**

**VANZI, Chief Judge.**

{1}     Defendant Joe Holguin entered a conditional guilty plea, reserving the right to appeal the denial of his motion to suppress. For the reasons that follow, we affirm.

**BACKGROUND**

{2}     On the evening of March 20, 2014, Deputy Mark Genrich of the Doña Ana County Sheriff's Department observed that the license plate on the vehicle that Defendant was driving was not properly illuminated, and he initiated a traffic stop. Deputy Genrich noticed that Defendant was nervous, he detected the odor of marijuana, and he saw a green leafy substance on the passenger's lap, which the passenger confirmed to be marijuana. Deputy Genrich then requested Defendant's driver's license, but Defendant indicated that he did not have one.

{3}     After issuing citations to both Defendant and the passenger, Deputy Genrich informed Defendant that the vehicle would be impounded pursuant to policy because Defendant lacked a driver's license. Deputy Genrich then began an inventory of the contents of the vehicle prior to having it towed. He found a methamphetamine pipe in the center console of the vehicle and, as a result, he placed Defendant under arrest. In the course of the ensuing search of Defendant's person, Deputy Genrich also found methamphetamine in Defendant's pocket. When he resumed the inventory of the vehicle, Deputy Genrich found additional baggies containing a white crystalline substance.

**{4}** Defendant was subsequently charged with possession of a controlled substance, contrary to NMSA 1978, Section 30-31-23(E) (2011), possession of drug paraphernalia, contrary to NMSA 1978, Section 30-31-25.1(A) (2001), and driving without a valid license, contrary to NMSA 1978, Section 66-5-2 (2013). Defendant filed a motion to suppress all evidence obtained from the vehicle and from his person, contending that the vehicle had been impermissibly seized prior to his arrest and, as such, the ensuing searches were unlawful. In response the State argued, inter alia, that the vehicle was validly impounded as a result of the fact that Defendant was unlicensed and that the ensuing inventory was permissible. A hearing was conducted on the motion, in the course of which Deputy Genrich testified to the facts described above. Additionally, the State tendered and the district court admitted a copy of the Doña Ana Sheriff's Department's vehicle impound policy (the impound policy). Deputy Genrich testified that he had impounded the vehicle because Defendant lacked a driver's license, and he explained that both this decision and the ensuing inventory were in accordance with the impound policy.

**{5}** At the close of the State's presentation, the district court asked who owned the vehicle. Deputy Genrich indicated that he believed Defendant's father was the registered owner. The district court then inquired whether Defendant had standing to challenge the search and seizure of the vehicle. In response the prosecutor stated that he believed an individual in lawful possession of a vehicle would have an expectation

3

of privacy, and he explained that he felt it was "easier" to refute Defendant's argument by demonstrating that the vehicle was lawfully in police custody and the inventory was justified. The district court provisionally disagreed, observing that if Defendant lacked standing, there would be no need for any further discussion. Defense counsel's position was then solicited; defense counsel opined that, insofar as Defendant operated and controlled the vehicle, he had standing to challenge the search of the vehicle.

{6}    The district court denied Defendant's motion to suppress on two grounds. First, because Defendant was not the owner of the vehicle and he failed to affirmatively establish either a subjective or an objectively reasonable expectation of privacy therein, the district court concluded that Defendant lacked standing to challenge the search of the vehicle. Second, insofar as Deputy Genrich took custody of Defendant's vehicle and performed the inventory pursuant to the impound policy, and insofar as the search served legitimate purposes, the district court concluded that the search was lawful.

**STANDARD OF REVIEW**

{7}    "In reviewing a trial court's denial of a motion to suppress, we observe the distinction between factual determinations which are subject to a substantial evidence standard of review and application of law to the facts, which is subject to de novo review." *State v. Nieto*, 2000-NMSC-031, ¶ 19, 129 N.M. 688, 12 P.3d 442 (alteration, internal quotation marks, and citation omitted). "We view the facts in the

4

manner most favorable to the prevailing party and defer to the district court's findings of fact if substantial evidence exists to support those findings." *State v. Urioste*, 2002-NMSC-023, ¶ 6, 132 N.M. 592, 52 P.3d 964.

**DISCUSSION**

**Standing**

{8}    As a threshold matter, the parties dispute whether the question of standing was properly considered below. We understand Defendant to contend that he was unfairly surprised when the district court raised the issue sua sponte. Defendant further argues that the prosecutor's responsive comments were tantamount to a concession, which should be conclusive. The State disagrees, asserting that it did not concede this point. Further, it argues that sua sponte inquiry into standing is permissible, and insofar as Defendant raised no objection and had the opportunity to present any evidence to the district court before the matter was taken up on appeal, neither unfair surprise nor lack of factual development should be presumed.

{9}    Because it entails a fact-intensive inquiry, Defendant's standing could not have been raised for the first time on appeal. *See State v. Porras-Fuerte*, 1994-NMCA-141, ¶ 10, 119 N.M. 180, 889 P.2d 215. In this case, however, Defendant's standing was unequivocally raised at the hearing on the motion to suppress. The fact that it was raised sua sponte is not improper, particularly insofar as Defendant bore the burden on this well-established threshold issue. *See, e.g., Dalton v. Santander Consumer*

*USA, Inc.*, 2015-NMCA-030, ¶ 26, 345 P.3d 1086 (observing that the district court was entitled to raise an issue sua sponte at a hearing on a defense motion and to request argument from counsel), *rev'd on other grounds*, 2016-NMSC-035, 385 P.3d 619; *State v. Portillo*, 2011-NMCA-079, ¶ 9, 150 N.M. 187, 258 P.3d 466 (characterizing standing as a threshold issue). *See generally State v. Van Dang*, 2005-NMSC-033, ¶ 7, 138 N.M. 408, 120 P.3d 830 ("To establish standing [to challenge the constitutionality of a search, a d]efendant must demonstrate that he had a subjective expectation of privacy that society will recognize as reasonable."). Although the prosecutor's comments could reasonably have been understood as a concession, this is not binding. *See State v. Muniz*, 2003-NMSC-021, ¶ 5, 134 N.M. 152, 74 P.3d 86 (stating that appellate courts have a duty to affirm the district court if its decision was correct, despite the state's concession of an issue at the district court level), *superseded by statute on other grounds as recognized by State v. Jones*, 2010-NMSC-012, ¶ 19, 148 N.M. 1, 229 P.3d 474; *State v. Harbison*, 2006-NMCA-016, ¶ 19, 139 N.M. 59, 128 P.3d 487 (concluding that an issue was preserved for consideration on appeal, where the district court issued a ruling thereupon, notwithstanding the state's apparent concession below), *aff'd*, 2007-NMSC-016, 141 N.M. 392, 156 P.3d 30.

**{10}**     The district court's clearly expressed concern that Defendant lacked standing, and its disagreement with the State's suggestion that there were easier ways of

6

refuting the argument raised in the motion to suppress, should have eliminated any doubt as to the significance of the issue. Defendant was therefore duly "alerted to the issue" at a point in time that afforded the requisite "opportunity to present evidence thereon at the trial court level." *Porras-Fuerte*, 1994-NMCA-141, ¶ 10. Defendant could have availed himself of that opportunity in any number of ways, such as by testifying himself or by requesting a continuance in order to marshal evidence. His failure to do so does not render the proceedings fundamentally unfair. *See generally State v. Barraza*, 1990-NMCA-026, ¶ 13, 110 N.M. 45, 791 P.2d 799 ("Failure to request a continuance undermines [a] defendant's claim of unfair surprise."). We therefore conclude that the district court appropriately considered the question, and accordingly, the issue is properly before us.

{11}     Standing "is a substantive doctrine that identifies those who may assert rights against unlawful searches and seizures." *Porras-Fuerte*, 1994-NMCA-141, ¶ 9. In order to suppress evidence obtained as a result of the search of another person's property, a defendant must demonstrate that he or she had a legitimate expectation of privacy therein. *See State v. Crocco*, 2014-NMSC-016, ¶ 16, 327 P.3d 1068 (observing that Fourth Amendment rights cannot be vicariously asserted and, accordingly, in order to suppress evidence obtained from another person's property, a defendant must establish a legitimate expectation of privacy therein); *Van Dang*, 2005-NMSC-033, ¶ 7 ("To establish standing [to challenge the constitutionality of a

7

search, a d]efendant must demonstrate that he had a subjective expectation of privacy that society will recognize as reasonable.").

{12} Where, as here, a defendant is not the registered owner of a vehicle, he or she may establish standing by presenting evidence that he or she was a regular, permissive user of the vehicle who exerted control over it and its contents. *See Van Dang*, 2005-NMSC-033, ¶ 10; *Portillo*, 2011-NMCA-079, ¶ 10. In this case, however, Defendant made no such showing. Although he was clearly operating the vehicle at the time of the traffic stop, he presented no evidence of either a direct or circumstantial nature that could be said to demonstrate either regular or permissive use. Contrary to Defendant's suggestion, the district court properly declined to infer authorization simply because the vehicle was owned by Defendant's father. *See Crocco*, 2014-NMSC-016, ¶ 20 ("[T]o establish standing . . . actual evidence of permission is required.").

{13} The New Mexico Supreme Court's decision in *Van Dang*, rejecting a claim of standing to challenge a vehicle search where the defendant similarly failed to provide any direct evidence that he had permission to drive it, is highly instructive. Although the defendant in *Van Dang* testified that he believed he had a right to drive the car and a right to privacy in its contents, he did not explain this belief, and he failed to call his uncle, who had rented the car, to testify. *See* 2005-NMSC-033, ¶ 2. No other evidence was presented to explain the circumstances of the defendant's use of the car. *Id.* The district court denied the defendant's motion to suppress because he "failed to prove

he had authority to be in possession of the vehicle he was driving at the time of the search." *Id.* ¶ 3. The New Mexico Supreme Court affirmed, holding that "the burden is on the driver to present evidence of consent or permission from the lawful owner or renter to be in possession of the vehicle in order to establish standing to challenge a search of the vehicle." *Id.* ¶ 12.

{14}     In this case, as in *Van Dang*, Defendant neither called his father as a witness at the suppression hearing to testify that he had granted Defendant permission to operate the vehicle, nor testified himself that his father had authorized his operation of the vehicle. Unlike the driver in *Van Dang*, Defendant did not even testify to any subjective belief that he had permission to use the vehicle. Although appellate counsel now asserts that Defendant was a permissive user, this is unavailing. *See State v. Hall*, 2013-NMSC-001, ¶ 28, 294 P.3d 1235 (stating that assertions of fact and arguments that are not supported by the record are not evidence). "Having failed to make this threshold showing, [the d]efendant fails to establish standing to challenge the search of the vehicle." *Van Dang*, 2005-NMSC-033, ¶ 12.

{15}     In light of the foregoing considerations, we conclude that the district court's ultimate determination that Defendant failed to demonstrate that he had standing to challenge the search and seizure of the vehicle is well supported. This supplies a sufficient basis for affirmance. We nevertheless proceed to consider the alternative basis for the district court's ruling on the motion to suppress.

**Validity of the Vehicle Search and Seizure**

{16} As described in the background section of this opinion, numerous incriminating items were seized from the vehicle that Defendant was driving and from Defendant's person after the vehicle was seized and inventoried. The validity of the practice of performing inventories and the status of inventory searches as an exception to warrant requirements are well established. *See generally State v. Ruffino*, 1980-NMSC-072, ¶¶ 3-4, 94 N.M. 500, 612 P.2d 1311 (identifying inventory searches as an exception to warrant requirements and commenting upon the widespread recognition of the doctrine); *State v. Nysus*, 2001-NMCA-102, ¶ 26, 131 N.M. 338, 35 P.3d 993 ("Inventory searches are well established as an exception to the warrant requirement of the Fourth Amendment."). The requirements for a lawful inventory search are: (1) that the police have control or custody of the object of the search, (2) that the inventory is made pursuant to established police regulations, and (3) that the search is reasonable. *Ruffino*, 1980-NMSC-072, ¶ 5.

{17} Both below and on appeal, Defendant has focused on the first element, arguing that the seizure of the vehicle, prior to his arrest, was improper.[1] We limit the scope of discussion accordingly.

{18} Vehicles often come into police custody following the driver's arrest. *See, e.g.*, *State v. Williams*, 1982-NMSC-041, ¶¶ 5-6, 97 N.M. 634, 642 P.2d 1093 (discussing vehicle impoundment incident to arrest and indicating that there must be some reasonable nexus between the arrest and the reason for the impoundment). However, an inventory search may be conducted in any situation in which a vehicle has validly been taken into police custody for the purpose of storage or safekeeping. *See generally* *State v. Bramlett*, 1980-NMCA-042, ¶ 11, 94 N.M. 263, 609 P.2d 345 (holding that "an inventory search must be limited to those situations where a vehicle has been impounded, that is, taken into custody for the purpose of storage or safekeeping" (internal quotation marks and citation omitted)), *overruled on other grounds by* *Armijo v. State ex rel. Transp. Dep't*, 1987-NMCA-052, ¶ 8, 105 N.M. 771, 737 P.2d 552. *Cf. State v. Boswell*, 1991-NMSC-004, ¶ 9, 111 N.M. 240, 804 P.2d 1059 ("A police inventory . . . presupposes that the police had some valid reason for taking

---

[1]We acknowledge that, initially, Defendant may have sought to advance challenges to the second and third elements on the ground that the State failed to present evidence that the inventory was performed in accordance with standardized practice. However, after the State supplemented the record with the inadvertently omitted impound policy, we understand Defendant to have abandoned any such argument(s).

custody of that object, for it is only because of such taking of custody that the police can be said to have some obligation to safeguard the contents." (internal quotation marks and citation omitted)). Accordingly, arrest is not an essential prerequisite.

{19}     In this case, the evidence established that the vehicle Defendant was driving was taken into police custody in accordance with the impound policy. Defendant contends that the impound policy, which provides that a deputy "may" impound a vehicle driven by an individual with no driver's license, does not *require* impoundment. By its plain language, however, the policy clearly *authorized* Deputy Genrich to impound the vehicle. This supplies a viable predicate for the seizure and the ensuing inventory. *See Williams*, 1982-NMSC-041, ¶ 7 (holding that a vehicle was "in police control and custody" for inventory purposes, where the officer was "authorized to take custody for the purpose of having it towed").

{20}     Of course, "the ultimate question in all cases regarding alleged search and seizure violations is whether the search and seizure was reasonable." *State v. Attaway*, 1994-NMSC-011, ¶ 20, 117 N.M. 141, 870 P.2d 103, *holding modified on other grounds by State v. Lopez*, 2005-NMSC-018, ¶¶ 18-19, 138 N.M. 9, 116 P.3d 80; *see also State v. Bomboy*, 2008-NMSC-029, ¶¶ 9, 12, 144 N.M. 151, 184 P.3d 1045 (observing that both Article II, Section 10 of the New Mexico Constitution and the Fourth Amendment of the United States Constitution guarantee that people will not be subjected to unreasonable searches and seizures, and explaining that while greater

protections are provided under the New Mexico Constitution for automobile searches, we do not equate automobiles with the heightened expectation of privacy associated with homes). As such, the terms and existence of the impound policy cannot be regarded as wholly determinative of the validity of impoundments and inventories conducted pursuant thereto. At a minimum, however, the impound policy supplies guidelines that tend to support the reasonableness of correlative police conduct. *See generally Ruffino*, 1980-NMSC-072, ¶ 5 (indicating that the existence of police regulations bears upon the reasonableness of the impoundment and search of vehicles by law enforcement officers).

{21} To the extent that a "nexus" between law enforcement activity and impoundment is required, in this case that requirement is satisfied. *See Williams*, 1982-NMSC-041, ¶ 5 (observing that where a vehicle is seized and inventoried in association with an arrest, there must be "some nexus between the arrest and the reason for the impounding"). There is a logical relationship between the action of law enforcement entailing the issuance of the citation for driving without a valid license, the ensuing separation of Defendant from the vehicle, and the impoundment. Defendant could not be permitted to drive the vehicle away, and under the circumstances, the policy of impounding the vehicle, as opposed to simply abandoning it at the location of the traffic stop, is not unreasonable. *See Boswell*, 1991-NMSC-004, ¶¶ 13-14 (holding that where police action separated the defendant from his

property, such that it was left in an unsecure location, seizure of the property was reasonable, to safeguard the property from loss or theft and to protect the police from liability and false claims).

{22} Defendant argues that Deputy Genrich's decision to impound the vehicle should be deemed unreasonable on the theory that his father (the registered owner) could have come to the scene and lawfully driven it away. Defendant contends that turning the vehicle over to its owner, as opposed to impounding it, could only decrease the State's exposure to liability and needless risk. Accordingly, to the extent that there was no need for the police to seize the vehicle, either to protect it or its contents, Defendant contends that the ensuing inventory search was impermissible.

{23} We have previously intimated that in an appropriate case, the availability of a registered owner with the ability to lawfully take custody of a vehicle might obviate the basis for impoundment and attendant inventory. *See Bramlett*, 1980-NMCA-042, ¶ 16 (observing that where police knew that the vehicle was registered to the defendant's father, arrangements to have it picked up by its owner would have obviated the necessity for impoundment and inventory). In this case, however, nothing in the record supports the premise. We see no indication that Defendant's father was "able to arrive at the scene . . . and lawfully drive away[.]" At the time of the encounter, Defendant made no such suggestion. Nor did he present any evidence to this effect at the hearing on the motion to suppress. Absent such evidence, we decline

14

to consider the argument. *See generally State v. Ortega*, 2014-NMSC-017, ¶¶ 57, 59, 327 P.3d 1076 (declining to address speculative arguments unsupported by the record); *State v. Trujillo*, 1994-NMSC-066, ¶ 12, 117 N.M. 769, 877 P.2d 575 (noting that appellate courts do not give advisory opinions on hypothetical issues). Similarly, to the extent that Defendant may argue that it was incumbent upon the State to search for the registered owner prior to impounding a vehicle, the argument is unsupported by citation to authority. We therefore assume no such authority exists. *See State v. Godoy*, 2012-NMCA-084, ¶ 5, 284 P.3d 410 ("Where a party cites no authority to support an argument, we may assume no such authority exists."). To the extent that Defendant invites this Court to impose such a burden on law enforcement officers in the absence of supporting authority, we decline the invitation.

{24}	In summary, the record before us supports the district court's determination that the vehicle was validly taken into police custody. As previously noted, the evidence further reflected that the inventory was conducted pursuant to standardized policy and procedure and served legitimate purposes, such that it was reasonable. Accordingly, all of the requirements associated with the inventory search doctrine were duly satisfied.

**CONCLUSION**

{25}	For the foregoing reasons, we conclude that Defendant's motion to suppress was properly denied. We therefore affirm.

{26}   **IT IS SO ORDERED.**

                                        _____

                                        **LINDA M. VANZI, Chief Judge**

**WE CONCUR:**

_____

**JAMES J. WECHSLER, Judge**

_____

**JONATHAN B. SUTIN, Judge**