The slip opinion is the first version of an opinion released by the Clerk of the Court of Appeals. Once an opinion is selected for publication by the Court, it is assigned a vendor-neutral citation by the Clerk of the Court for compliance with Rule 23-112 NMRA, authenticated and formally published. The slip opinion may contain deviations from the formal authenticated opinion.

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

Opinion Number: _____

Filing Date: <u>January 17, 2024</u>

**No. A-1-CA-40287**

**STATE OF NEW MEXICO,**

     Plaintiff-Appellee,

v.

**ROSS SANDERS,**

     Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF LINCOLN COUNTY**
**John P. Sugg, District Court Judge**

Raúl Torrez, Attorney General
Santa Fe, NM
Meryl E. Francolini, Assistant Attorney General
Albuquerque, NM

for Appellee

Bennett J. Baur, Chief Public Defender
Kimberly Chavez Cook, Assistant Appellate Defender
Santa Fe, NM

for Appellant

**OPINION**

**MEDINA, Judge.**

{1} The opinion filed on December 20, 2023, is hereby withdrawn, and this opinion is substituted in its place. Defendant Ross Sanders appeals his conviction for possession of a controlled substance (methamphetamine), contrary to NMSA 1978, Section 30-31-23(E) (2019, amended 2021). Defendant argues on appeal that the district court erred in denying his motion to suppress under Article II, Section 10 of the New Mexico Constitution based on this Court's recent opinion in *State v. Jim*, 2022-NMCA-022, 508 P.3d 937, which was decided after the district court denied Defendant's motion to suppress but before entry of Defendant's judgment and sentence. Alternatively, Defendant argues that his counsel was ineffective for failing to challenge the underlying arrest in a motion to suppress. For the reasons set forth below, we reverse and remand.

**BACKGROUND**

{2} In February 2021, Officer Wrye stopped Defendant for driving on a suspended license. Officer Wrye had prior knowledge that Defendant's license was suspended. Officer Wrye removed Defendant from the vehicle and placed him under arrest.

{3} Officer Conway arrived shortly after the stop and assisted Officer Wrye in preparing the vehicle for towing. Both Officer Wrye and Officer Conway testified that police policy requires officers to tow vehicles after traffic stops when the driver

is arrested and there is no one else to take control of the vehicle. Under the policy, officers must call a tow truck, notify dispatch that the vehicle requires towing, and complete a tow inventory search and inventory sheet. The purpose of the inventory search and sheet is to protect the arrestee's property and the department from claims that an item is missing by documenting any items of value found in the vehicle.

{4} After Officer Wrye placed Defendant in his police unit, Officer Wrye and Officer Conway conducted a tow inventory search of the entire vehicle. Officer Wrye then drove away with Defendant leaving Officer Conway to complete the tow inventory sheet and to wait for the arrival of the tow truck. When the tow truck arrived, Officer Conway conducted an additional search of the vehicle. During this search, Officer Conway found a black bag that was zipped closed in the rear hatchback of the vehicle. Officer Conway unzipped the bag and found an additional bag inside that contained drug paraphernalia and methamphetamine.

{5} Defendant was charged with possession of a controlled substance (methamphetamine) and driving while license suspended. Defendant moved to suppress the methamphetamine under Article II, Section 10 of the New Mexico Constitution, and argued at the motion hearing that the search of the black bag and seizure of the methamphetamine was unreasonable because it was not conducted under the authority of a warrant. The State responded that, for police inventory searches, New Mexico had not departed from federal precedent, which allows

officers to open containers during the search. The district court denied Defendant's motion, finding "the search of . . . Defendant's vehicle was a valid inventory search and thus an exception to the general rule that a search warrant is required for a valid search." Additionally, the district court found in part that "the search was reasonable as it was performed in order to safeguard . . . Defendant's property and protect the officers from claims of lost or stolen property" under New Mexico law. The jury convicted Defendant of one count of possession of a controlled substance (methamphetamine).[1]

{6}     After Defendant's trial but before the entry of the judgment and sentence, this Court filed its opinion in *State v. Jim.* In *Jim*, this Court departed from federal inventory search precedent with regard to inventory searches of vehicles for the first time. *See* 2022-NMCA-022, ¶¶ 14-22. This Court held that, to determine if an inventory search was reasonable under Article II, Section 10, "we must weigh the governmental and societal interests advanced to justify the intrusion against the constitutionally protected interest of the individual citizen in the privacy of his effects." *Jim*, 2022-NMCA-022, ¶ 22 (text only) (citation omitted). After entry of the and sentence, this appeal followed.

---

[1]At trial, Defendant entered a conditional plea of guilty to one count of driving while license suspended reserving the right to appeal whether New Mexico Motor Vehicle Division records are testimonial. Defendant did not pursue that issue on appeal.

**DISCUSSION**

{7} Defendant challenges the denial of his motion to suppress. Defendant argues, as he did below, that the opening of the zipped bag and seizure of the methamphetamine during the inventory search was unconstitutional under the greater protection afforded under Article II, Section 10. Defendant cites the new framework articulated in *Jim* to support his claim. The State responds that Defendant lacked standing to challenge the search, and alternatively argues that the search was reasonable under both the pre-*Jim* and post-*Jim* inventory search framework.

{8} "Appellate review of a motion to suppress presents a mixed question of law and fact. We review factual determinations for substantial evidence and legal determinations de novo." *State v. Paananen*, 2015-NMSC-031, ¶ 10, 357 P.3d 958 (internal quotation marks and citation omitted).

**I.    Defendant's Standing to Challenge the Search**

{9} We begin with the State's contention that Defendant lacks standing to challenge the search because Defendant testified that he did not own the black zipper bag at trial. The State raises this argument for the first time on appeal. Defendant responds with multiple arguments: the State did not challenge standing below, standing is an improper basis for affirmance because it is a factual issue that was not litigated below, the State's argument requires Defendant to unfairly choose between constitutional rights, and the facts at trial establish Defendant's standing to challenge

4

the search of the vehicle which he describes as his. We agree with Defendant that the facts at trial establish Defendant's standing to challenge the search of his vehicle, including the black bag, and explain.[2]

{10}   "To establish standing, [a d]efendant must demonstrate that he had a subjective expectation of privacy that society will recognize as reasonable." *State v. Van Dang*, 2005-NMSC-033, ¶ 7, 120 P.3d 830. We review the entire record, and generally "one who owns, controls, or lawfully possesses property has a legitimate expectation of privacy." *Id.*

{11}   Officer Wrye testified at trial that Defendant was the only person in the vehicle when he stopped it and that he had not seen anyone else drive the vehicle. Officer Wrye additionally testified at trial and during the motion hearing that he had seen Defendant driving the vehicle numerous times over the previous week. Defendant's wife testified that although her mother owns the vehicle, Defendant is the person who uses it.

{12}   Under these uncontested facts, Defendant is a regular, permissive user of the vehicle and exerted control over the vehicle and its contents, including the black

---

[2]We decline to address Defendant's argument that the State's position creates an unfair tension between his constitutional rights—although properly developed on appeal—because we conclude that Defendant had standing to challenge the search. *See State v. Thompson*, 2022-NMSC-023, ¶ 29, 521 P.3d 64 ("It is an enduring principle of constitutional jurisprudence that courts will avoid deciding constitutional questions unless required to do so." (internal quotation marks and citation omitted)).

zipper bag. Therefore, we hold that Defendant had standing to contest the search of the black bag located inside the vehicle despite denying that the methamphetamine and drug paraphernalia were his during his trial testimony. *Compare State v. Soto*, 2001-NMCA-098, ¶¶ 5, 8, 131 N.M. 299, 35 P.3d 304 (concluding that the defendant was a regular, permissive user of his girlfriend's vehicle and had standing to challenge the search because his girlfriend and the defendant lived together, the vehicle was their only car, both used it on a day-to-day basis, and the defendant routinely used the car), *and State v. Leyba*, 1997-NMCA-023, ¶ 14, 123 N.M. 159, 935 P.2d 1171 (concluding that the defendant had standing to challenge the search of the vehicle because the defendant introduced evidence that the owner of the vehicle had given the defendant permission to use it, making the defendant a permissive user who exerted control of the vehicle and its contents), *with Van Dang*, 2005-NMSC-033, ¶¶ 2, 12 (concluding that the defendant did not have standing to challenge a search in a rental vehicle that his uncle rented because the defendant did not present evidence that his uncle gave permission to use the rental or authorized the defendant's use of the vehicle). Because we hold that Defendant had standing to challenge the search, we next evaluate the search of the zipped bag during the inventory search.

## II.     The Inventory Search

{13}     Defendant concedes, and the State agrees, that the search and seizure of the methamphetamine was reasonable under the Fourth Amendment. Defendant only argues that the search of the zipped bag and seizure of its contents during the inventory search violated his right under Article II, Section 10 of the state constitution. We therefore begin our analysis by reviewing this Court's departure from federal precedent in *Jim*.

### A.     Article II, Section 10 Departs From Federal Jurisprudence

{14}     In *Jim*,[3] this Court departed from federal inventory search precedent and held that, to determine if the search of a closed and locked container in an automobile during an inventory search was reasonable under Article II, Section 10, "we must weigh the governmental and societal interests advanced to justify the intrusion against the constitutionally protected interest of the individual citizen in the privacy of his effects." *Jim*, 2022-NMCA-022, ¶ 22 (text only) (citation omitted). In *Jim*, the

---

[3] The State also questions whether this Court's opinion in *Jim* applies to Defendant's appeal. Although *Jim* was filed after the district court's denial of Defendant's motion, we now review Defendant's argument under *Jim* on appeal because Defendant's case was pending when this Court filed *Jim* and Defendant preserved his claim under Article II, Section 10. *See State v. Storey*, 2018-NMCA-009, ¶ 30, 410 P.3d 256 ("A new rule for the conduct of criminal prosecutions is to be applied retroactively to all cases, state or federal, pending on direct review or not yet final." (text only) (citation omitted)); *State v. Dorais*, 2016-NMCA-049, ¶ 29, 370 P.3d 771 ("A change in the law generally applies to cases pending on direct appeal, as long as the issue was raised and preserved below." (text only) (quoting *Kersey v. Hatch*, 2010-NMSC-020, ¶ 19, 148 N.M. 381, 237 P.3d 683)).

defendant was arrested for trespassing after sitting in their pickup truck for several hours in a shopping center and repeatedly refusing to leave the parking lot. *Id.* ¶¶ 2-3. The officer conducted a search of the defendant's truck because the truck would be impounded. *Id.* ¶ 3. During the search, the officer found a methamphetamine pipe, smoking straw, and tin foil with residue underneath the driver's side floor mat. *Id.* The officer then found a locked gun safe in the car, removed it for safekeeping, and opened it using a key found on the defendant's key ring. *Id.* Inside the gun safe the officer found a small handgun and a small amount of heroin. *Id.*

{15} The defendant moved to suppress the evidence found in the locked gun safe, and the district court initially granted the motion. *Id.* ¶ 4. The state filed a motion to reconsider and introduced evidence that police policy permitted opening locked containers. *Id.* The district court then reversed its decision and denied the defendant's motion to suppress the evidence found in the gun safe because the officers had conducted a valid inventory search under both the Fourth Amendment and Article II, Section 10. *Id.*

{16} This Court reversed the denial of the motion to suppress, departing from federal inventory search standards. *Id.* ¶ 14. In departing from federal inventory search standards, this Court focused on "two distinctive characteristics of New Mexico law: greater protection of privacy in the context of automobiles and a strong preference for warrants." *Id.* ¶ 15; *see id.* ¶¶ 16-22 (explaining departure from federal

precedent under distinctive characteristics of New Mexico law). As a result, to determine if an automobile inventory search is reasonable under Article II, Section 10, "we must weigh the governmental and societal interest advanced to justify the intrusion against the constitutionally protected interest of the individual citizen in the privacy of his effects." *Id.* ¶ 22 (text only) (citation omitted). "This approach adheres to the fact-specific nature of reasonableness determinations under the New Mexico Constitution." *Id.*

## B.     The Search of the Zipped Bag Violated Article II, Section 10

{17}     Defendant argues that the State's interests in opening the black zipper bag do not outweigh his general privacy interests in a closed container. Therefore, Defendant argues, the State's search of the bag violated his right to be free from an unreasonable search under Article II, Section 10. In contrast, the State argues that Defendant's expectation of privacy is not as strong as the expectation of privacy discussed in *Jim* where the state opened and searched a locked gun safe found in the defendant's vehicle. 2022-NMCA-022, ¶ 3. The State argues that the search here was reasonable because it was necessary to protect Defendant's property and to protect officers from claims of lost property. We hold that the search of the zipped bag violated Defendant's right to be free from an unreasonable search under the New Mexico Constitution and explain.

{18} We begin by considering Defendant's privacy interest in the zipped bag found in the vehicle. "New Mexico courts have rejected the notion that an individual lowers his expectation of privacy when he enters an automobile." *Id.* ¶ 23 (internal quotation marks and citation omitted). Although the privacy interest in a vehicle is not the same as a privacy interest in a home, "New Mexico's extra layer of protection from unreasonable searches and seizures involving automobiles recognizes and safeguards the substantial privacy interest New Mexico's motorists have in the papers and effects that may be found inside an automobile." *Id.* Indeed, this Court has observed that "a routine police inventory of the contents of an automobile involves a substantial invasion into the privacy of the vehicle owner." *Id.* (internal quotation marks and citation omitted). Here, Defendant had an additional expectation of privacy with regard to the zipped black bag sufficient to invoke a constitutional protection against an unreasonable search. *See State v. Villanueva*, 1990-NMCA-051, ¶ 12, 110 N.M. 359, 796 P.2d 252 (stating that "individuals normally possess an expectation of privacy in their closed items of luggage"); *State v. Johnson*, 1973-NMCA-119, ¶¶ 5-8, 12, 85 N.M. 465, 513 P.2d 399 (reversing the district court's denial of the defendant's motion to suppress because the search of the defendant's closed duffel bag under a third-party's permission violated the defendant's rights to be free from unreasonable searches and seizures). As this Court

in *Jim* emphasized, this expectation "was not diminished" because the closed zipped bag was found inside the vehicle. 2022-NMCA-022, ¶ 23.

{19} We agree with the State that the zipped bag differs in character from the locked safe at issue in *Jim*. But we disagree that "it offered no protection of its contents the way a safe would, and did not convey an absolute intent to exclude others from its contents." The black zipper bag was opaque and zipped closed, therefore excluding others from its contents unless unzipped. Although a lock like in *Jim* is indicative of a heightened expectation of privacy, we cannot say that only locked containers are afforded additional protections during vehicle inventory searches. Therefore, Defendant had an expectation of privacy with respect to the zipped bag.

{20} Having determined Defendant's expectation of privacy, we now weigh this interest against "the governmental and societal need for the search." *Id.* ¶ 24. "We evaluate the governmental need by considering the extent to which the search was reasonably necessary to accomplish any of the three legitimate governmental purposes that justify this type of administrative caretaking search." *Id.* Like in *Jim*, the State here argues that the search was reasonable to protect Defendant's property and to protect the police from liability. For the same reasons this Court outlined in *Jim*, we find these justifications unpersuasive.

11

{21} With respect to protecting Defendant's property, although there is a possibility that Defendant's property could have become damaged, this "possibility becomes exceedingly unlikely" when the officers took Defendant's vehicle and property into police custody for safekeeping. *Id.* ¶ 25. In fact, the officers sufficiently protected Defendant's property without needing to search the zipped bag. While Officer Conway completed the tow inventory sheet and waited for the tow truck, he denied access to the vehicle to an individual who attempted to take it. The State has not explained how a greater intrusion into the zipped bag was necessary to safeguard Defendant's property beyond the protections provided by police custody.

{22} With respect to protecting the police from liability, this Court in *Jim* stated "we are not persuaded that opening and inventorying the contents of a locked container provides any more protection than inventorying the locked container as a unit, as a false claim can be made that items inside the safe were stolen regardless of whether the police opened it or not." *Id.* ¶ 26. The same reasoning applies to the facts here. The State has not explained how the search provided greater protections against liability when "sealing and storing containers would provide at least as much protection to the remote threat as a warrantless inventory search of containers." *See id.* (internal quotation marks and citation omitted). Without more, simply invoking protections against liability does not outweigh Defendant's established privacy interest.

{23} For the forgoing reasons, we hold that the warrantless search of the zipped bag violated Defendant's right to be free from an unreasonable search under Article II, Section 10 of the New Mexico Constitution. Because we reverse on these grounds, we do not reach Defendant's alternative ineffective assistance of counsel claim. We therefore reverse the district court's denial of Defendant's motion to suppress under our new analytical framework expressed in *Jim*.

**CONCLUSION**

{24} We reverse and remand for further proceedings consistent with this opinion.

{25} **IT IS SO ORDERED.**

_____
**JACQUELINE R. MEDINA, Judge**

**WE CONCUR:**

_____
**JENNIFER L. ATTREP, Chief Judge**

_____
**SHAMMARA H. HENDERSON, Judge**